STEPHEN C. BOMBERO ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF TRUMBULL (14180)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued February 14—decision released May 21, 1991

*Burton S. Yaffie,* for the appellant (defendant).

*Barbara F. Green,* with whom, on the brief, was *Samuel T. Rost,* for the appellees (plaintiffs).

BORDEN, J. The defendant, the planning and zoning commission of the town of Trumbull (commission), appeals from the judgment of the trial court that an amendment to the subdivision regulations of the town

is (1) unconstitutionally vague, and (2) arbitrary. The plaintiffs[1] had appealed to the trial court from the action of the commission in enacting the amendment. On appeal to this court, the commission claims that the trial court improperly concluded that: (1) the plaintiffs were aggrieved by the enactment of the amendment; and (2) the amendment is unconstitutionally vague and is arbitrary. We conclude that the trial court should not have considered the validity of the subdivision regulation in the context of the plaintiffs' zoning appeal, and we reverse the judgment of the trial court.

Certain facts are undisputed. After a public hearing, the commission amended chapter IX, § 1, of the subdivision regulations by adding the following provision: "Land with existing slopes of more than 25 per cent, or areas which have been designated as inland wetlands, or areas lying within a 100-year flood plain mapped by the Federal Flood Insurance Administration is environmentally sensitive land, and shall be excluded from the minimum lot size or acreage requirements set forth on the schedule in Article III of the Zoning Regulations, to the extent that such environmentally sensitive land exceeds 50 per cent of such parcel."[2] Section 1 of chapter IX of the subdivision regulations is entitled "Recommendations."[3] Thus, the

[1] The plaintiffs are Stephen C. Bombero, Ronald M. Bombero, William J. Buckley, Eleanora B. Carpenter, Ellen C. Daly, Dorothy Grabowski, Edmond Fenyes, Mary Fenyes, Frank Minardi and Kathleen Minardi.

[2] The schedule in article III of the zoning regulations, referred to in the amendment, defines the minimum lot sizes for the various zones; those sizes range from one acre in Residence AAA to three acres in Industrial I-L3.

[3] Section 1 of chapter IX of the subdivision regulations, prior to the amendment at issue in this case, provided as follows: "RECOMMENDATIONS. In all subdivisions, the Commission may make such recommendations as shall seem to it necessary to preserve and enhance scenic values, the environmental quality, and conditions making for excellence of residential, commercial or industrial development, as the case may be."

effect of the amendment was to add its provisions to the "Recommendations" section of chapter IX of the subdivision regulations.[4]

Although the parties have not explained precisely how the amendment affects subdivision applications, presumably it is linked to chapter V, § 2, of the subdivision regulations. That section provides that a "Plan of Subdivision shall conform to the zoning regulations in effect at the time of approval of such Plan [of Subdivision]." The general effect of the subdivision amendment, therefore, is to enable the commission to deny a subdivision application for a parcel more than 50 percent of which fits the definition of "environmentally sensitive land," on the ground that the parcel is excluded from the applicable schedule in Article III of the zoning regulations. This record does not disclose, however, any parallel amendment to the zoning regulations. In amending the subdivision regulation, the commission was acting solely in its planning, as opposed to its zoning, capacity. See *Cristofaro* v. *Burlington,* 217 Conn. 103, 106, 584 A.2d 1168 (1991).

The plaintiffs appealed from the enactment of the amendment to the Superior Court. They claimed that the amendment was impermissibly vague because: (1) it contained no adequate definition of a wetland; and (2)

---

[4] After the amendment, therefore, § 1 of chapter IX of the subdivision regulations provided as follows: "RECOMMENDATIONS. In all subdivisions, the Commission may make such recommendations as shall seem to it necessary to preserve and enhance scenic values, the environmental quality, and conditions making for excellence of residential, commercial or industrial development, as the case may be.

"Land with existing slopes of more than 25 per cent, or areas which have been designated as inland wetlands, or areas lying within a 100-year flood plain mapped by the Federal Flood Insurance Administration is environmentally sensitive land, and shall be excluded from the minimum lot size or acreage requirements set forth on the schedule in Article III of the Zoning Regulations, to the extent that such environmentally sensitive land exceeds 50 per cent of such parcel."

the meaning of "[l]and with existing slopes of more than 25 per cent" was too uncertain to guide the determinations of the commission or the property owner, as was the phrase "excluded from the minimum lot size or acreage requirements set forth on the schedule in Article III of the Zoning Regulations . . . ." They also claimed that: (3) the inclusion in the amendment of the reference to wetlands constituted an illegal usurpation of the power of the town's inland wetlands and watercourses commission because only that commission was authorized to determine wetlands; (4) the amendment took their land without just compensation; (5) the amendment was adopted without the commission stating its reasons therefor on the record, in violation of General Statutes § 8-3 (c); and (6) during the commission's deliberations on the proposed amendment, the commission arbitrarily changed the slope requirement from 15 to 25 percent.

At the hearing in the trial court, the plaintiffs only presented evidence of aggrievement. That evidence was that certain of the plaintiffs[5] owned undeveloped parcels of land in the town that were large enough to be subdivided, and that each of these parcels either contained an area of more than a 25 percent slope or an area that had been designated as wetlands on the town's wetlands map.[6] In addition, the commission had

---

[5] The plaintiffs who submitted evidence of aggrievement were Stephen C. Bombero, Eleanora B. Carpenter, Dorothy B. Grabowski, Edmond Fenyes and Mary Fenyes, Frank Minardi and Kathleen A. Minardi. There was no aggrievement evidence offered with regard to the plaintiffs Ronald M. Bombero, William J. Buckley and Ellen C. Daly.

[6] The evidence as to the parcels owned by Carpenter and Grabowski, and by the Minardis, was that they had slopes of more than 25 percent. The evidence as to the parcel owned by Stephen C. Bombero was that more than 50 percent of it had been designated as wetlands. The evidence as to the parcel owned by Edmond and Mary Fenyes was that all of it had been designated as wetlands.

filed with the trial court, as part of its return of record, the administrative record of the amendment.[7]

After oral argument, the trial court found that the plaintiffs were aggrieved, and ruled from the bench "that the regulation is . . . void for vagueness. . . ." This was followed by a written memorandum of decision in which the trial court further stated that the amendment was "void for vagueness in that: Said regulation lacks standards sufficient to guide the commission and to enable those affected to know their rights and obligations. In addition, the record reveals no basis for using a 25% grade or a 50% maximum as standards. The record reveals (Exhibit 12)[8] that both figures were arbitrarily chosen with no engineering or scientific support."[9]

Upon a grant of certification, the commission appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023.

The commission claims that the trial court improperly found that the plaintiffs were aggrieved and improp-

---

[7] The administrative record discloses, inter alia, that as first considered by the commission the proposed amendment differed in three respects from the amendment as finally adopted: (1) it applied to parcels with existing slopes of more than 15 percent, rather than 25 percent; (2) it left to the discretion of the commission and the recommendation of the town engineer whether a parcel that fit the definition of "environmentally sensitive land" would nonetheless be excluded from the minimum lot acreage of the zoning regulations; and (3) it did not limit that definition "to the extent that such environmentally sensitive land exceeds 50 per cent of such parcel." The administrative record contains no facts about the plaintiffs' particular parcels, or the potential effect of the regulation on them.

[8] Exhibit 12 of the return of record is a copy of the minutes of the November 29, 1988 meeting of the commission, at which the proposed amendment was discussed, further amended in several respects; see footnote 7, supra; and adopted.

[9] This latter part of the trial court's decision does not rest on the vagueness principle, but on the plaintiffs' claim that the commission's modification of the proposed amendment from a slope of 15 percent to 25 percent was arbitrary.

erly invalidated the regulation. We need not reach the merits of the commission's claims because we conclude that the appropriate procedural vehicle for the plaintiffs' attack on the regulation was a declaratory judgment action, and not an appeal from its enactment.

Recently, in *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 561–63, 552 A.2d 796 (1989), we held that the trial court should have dismissed the plaintiffs' constitutional vagueness attack on the adequacy of the town of Ridgefield's wetlands regulations made in the context of an appeal from the denial of a wetlands application. We stated that "[t]he final constitutional issue, relating to the adequacy of the regulations in setting forth standards for a decision upon an application, constitutes the kind of general attack upon land use regulations that we have indicated should be the subject of a declaratory judgment action rather than an appeal from the denial of an application submitted pursuant to those regulations." Id., 563. The rationale for this procedural requirement is that "[t]he validity of the regulations is a question in which many property owners, in addition to the plaintiffs, may have an interest, and an opportunity for such persons to intervene should be afforded before any such determination should be made." Id.

This rationale applies equally here. With the exception of the plaintiffs' claim of a taking without just compensation, which we discuss below, the plaintiffs' claims constitute a general attack on the validity of the regulation. Such an attack should have been presented by way of a declaratory judgment action in which other property owners who may have an interest would have had the opportunity to intervene and be heard.

Indeed, this record supplies an additional rationale for requiring the plaintiffs to have mounted their attack in a declaratory judgment action. Because this case

came to the court in the context of an appeal from the enactment of the regulation, the record is devoid of a sufficient factual basis on which to evaluate the claimed vagueness of the regulation. See *D & J Quarry Products, Inc.* v. *Planning & Zoning Commission,* 217 Conn. 447, 453, 585 A.2d 1227 (1991). The only facts presented to the court, other than those contained in the administrative record, were those relating to aggrievement.

Regulations, like statutes, do not exist in a vacuum. See *State* v. *Floyd,* 217 Conn. 73, 78, 584 A.2d 1157 (1991); *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 75, 523 A.2d 486 (1987). Ordinarily, their purported vagueness should be evaluated in the context of a specific factual situation, so that a court may resolve any ambiguities and, if necessary, interpret them in the light of those facts so as to avoid any potentially unconstitutional vagueness. *Connecticut Building Wrecking Co.* v. *Commissioner of Environmental Protection,* 218 Conn. 580, 588, 590 A.2d 447 (1991). In a declaratory judgment action, the party seeking to invalidate the regulation would be required to present sufficient facts to the court "in order to meet its burden of demonstrating the [regulation's] adverse impact on some protected interest of its own, in its own particular case, and not merely under some hypothetical set of facts as yet unproven. . . . In the absence of weighty countervailing circumstances, facial invalidation of a [regulation] is improvident." *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* supra. Similarly, in this case, the court's facial invalidation of the regulation on vagueness grounds was improvident, because insufficient facts were presented to permit the court to apply and to evaluate the language of the regulation in a concrete factual setting.

It is of no moment that not all of the bases of the plaintiffs' challenge to the regulation were constitutional. It cannot be disputed that the plaintiffs' appeal to the trial court was a "general attack"; *Cioffoletti* v. *Planning & Zoning Commission,* supra, 563; on the validity of the regulation. As such, it involved questions in which many other property owners had an interest, and they should have been afforded the opportunity to intervene and be heard. Id.; see also *Cristofaro* v. *Planning & Zoning Commission,* 11 Conn. App. 260, 263–64, 527 A.2d 255, cert. denied, 204 Conn. 810, 528 A.2d 1156 (1987) (nonconstitutional challenge to validity of subdivision regulation should have been made by way of declaratory judgment action, rather than by appeal from denial of subdivision application).

We recognize that our cases have not always been consistent in requiring a declaratory judgment action as the method by which to challenge the validity of zoning or planning regulations. Compare *Bottone* v. *Westport,* 209 Conn. 652, 553 A.2d 576 (1989), *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 523 A.2d 467 (1987), *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* 160 Conn. 109, 273 A.2d 880 (1970), *Calve Bros. Co.* v. *Norwalk,* 143 Conn. 609, 124 A.2d 881 (1956), *Gohld Realty Co.* v. *Hartford,* 141 Conn. 135, 104 A.2d 365 (1954), *Cristofaro* v. *Planning & Zoning Commission,* supra (declaratory judgment actions), with *Carofano* v. *Bridgeport,* 196 Conn. 623, 495 A.2d 1011 (1985) (injunction), *New Milford* v. *SCA Services of Connecticut, Inc.,* 174 Conn. 146, 384 A.2d 337 (1974) (injunction), *Sonn* v. *Planning Commission,* 172 Conn. 156, 374 A.2d 159 (1976) (appeal), *Zenga* v. *Zebrowski,* 170 Conn. 55, 364 A.2d 213 (1975) (appeal). Without attempting to reconcile all those cases, we think that the rationales behind the requirement of a declaratory judgment action apply to the plaintiffs' claims in this case.

The plaintiffs' principal claim in the trial court was that the regulation was unconstitutionally vague. That claim falls squarely within both the rationale of *Cioffoletti,* and the additional rationale of requiring an adequate factual predicate for such a claim. Where, as here, the plaintiffs combine constitutional and unconstitutional attacks on a regulation, it serves judicial economy to require that the nonconstitutional claims of invalidity be presented to the court in the same action as the constitutional claims. It makes little procedural sense to balkanize the plaintiffs' challenges between a declaratory judgment action and an appeal. Since the declaratory judgment action can accommodate both the constitutional and nonconstitutional claims, whereas the statutory appeal may not, judicial economy suggests that the declaratory judgment action be the proper vehicle.

This does not mean, however, that whenever a party wishes to challenge the validity of a local land use regulation, he must do so by a declaratory judgment action. There are many instances where, because of the procedural posture of the case, he may have no practical choice but to raise his challenge in the context of an appeal.[10] We hold only that where, as here, the plaintiff mounts a general attack on the legislative enactment of a regulation, primarily based on constitutional vagueness grounds, and combines therewith nonconstitutional grounds for the regulation's invalidity, he must do so by a declaratory judgment action rather than by an appeal from the enactment. Thus, the plain-

---

[10] For example, a landowner faced with a cease and desist order based on an invalid regulation should be permitted to raise its invalidity in the course of his appeal from the cease and desist order. Similarly, an aggrieved person who wishes to challenge the land use authority granted to his neighbor that is based on an invalid regulation should be permitted to do so by way of an appeal from that grant of authority. See *Sonn* v. *Planning Commission,* 172 Conn. 156, 374 A.2d 159 (1976).

tiffs in this case should have brought a declaratory judgment action in order to raise their challenges to the facial invalidity of the regulation.

In this case, the only claim raised by the plaintiffs that does not come within the rationale of requiring a declaratory judgment action is their claim that the enactment of the regulation constituted a taking of their properties without just compensation. That claim does not involve a general challenge to the validity of the regulation. A landowner has the burden of establishing that a land use regulation amounts to a taking of his particular property. See *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 271–72, 205 A.2d 774 (1964). This ordinarily involves a showing that, on the particular facts of the case, the regulation " 'practically destroys [the property's] value for any permitted use to which it can reasonably be put . . . .' " *Primerica* v. *Planning & Zoning Commission,* 211 Conn. 85, 98, 558 A.2d 646 (1989), quoting *State National Bank* v. *Planning & Zoning Commission,* 156 Conn. 99, 106, 239 A.2d 528 (1968). Although generally we would remand to the trial court any issue that it did not resolve, we see no reason to do so in this case. The record establishes without question that the plaintiffs made no attempt to prove a taking. We are not inclined to remand to the trial court a claim of parties on which they made no attempt to present evidence in the first instance.

The judgment is reversed and the case is remanded with direction to dismiss the plaintiffs' appeal.

In this opinion the other justices concurred.