[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
Procedural History
The plaintiff, Laurie G. Gonthier, by application dated November 5, 1993, proposed to subdivide into (11) lots, certain real property consisting of approximately 34.186 acres, located in Watertown, Connecticut, and identified as Cider Hill.
The Planning and Zoning Commission of the Town of Watertown, the defendant, considered said application at its meetings of December 1, 1993, January 5, 1994, and January 27, 1994. At its final meeting of the 27th, the members of the defendant commission voted unanimously to reject plaintiff's application citing six reasons for the denial based on the Subdivision Regulations for the Town of Watertown.
The plaintiff filed its appeal to the court on February 15, 1994 claiming that the defendant, in denying its application, acted illegally, arbitrarily, and in abuse of its discretion. Trial of the issues was held on April 14, 1995.
 II
Facts
On December 1, 1993, at the initial meeting of the defendant commission regarding the plaintiff's application, the plaintiff, through counsel, noted that the subdivision plan had been turned down by the Inland/Wetlands Commission, and that the matter was on appeal to the Superior Court. (Record, Item 8, p. 9; See also Items 7.3-7.5).
The next relevant matter considered was the condition of a dilapidated roadway adjacent to the Cider Hill property known as CT Page 7904 Old Baird Road and the responsibility of improving it. Members of the defendant commission noted subdivision regulations that require an indication that the road would be improved, prior to a granting of approval for such a subdivision. Plaintiff responded that since the road was a town road it was the responsibility of the town to improve it, and that the regulations referred to were "patently invalid." (Record, Item 8, pp. 9-12; See also Item 3, pp. 29-30, Regulation 4.3.10).
Mrs. Wick of the defendant commission raised the issue that the proposed subdivision plan gave no indication of land "left for open space." This issue was left without a response by plaintiff, and attention returned to the rejection by the Inland/Wetlands Commission and the affect it would have on these proceedings. (Record, Item 8, p. 12; See also Item 6).
It was further noted that the "crux of the whole issue" relative to plaintiff's application was "point five"; a reference to the Old Baird Road issue. (Record, Item 8, p. 13; See also Item 7, p. 2).
At the meeting of January 5, 1994, the members of the defendant commission considered a legal opinion that the defendant commission "should take into account the comments and the recommendations of the Inland/Wetlands Agency." (Record, Item 13, p. 11; See also Item 12).
Comments were also entertained by the members regarding the "dry water line" issue and an upcoming meeting of the Water and Sewer Authority. (Record, Item 13, p. 12).
At this meeting the plaintiff indicated that there had been no change in its plans regarding the proposed subdivision. (Record, Item 13, p. 13).
At the final meeting of January 27, 1994, the defendant commission considered a report from the Water and Sewer Authority relative to the dry water and sewer lines, indicating the long term plan to extend the water and sewer lines to the Cider Hill property within the next ten years. Commissioner Masi, therefore, concluded that the installation of dry pipes for water and sewer must be considered in conjunction with plaintiff's application. (Record, Item 17, pp. 2-3; See also Item 14). CT Page 7905
Commissioner Wick, again, raised the issue of the lack of consideration given to the "open space" requirements of the regulations. Plaintiff proposed a "negative" or "conservation easement" whereby six acres would be maintained in perpetuity, with a prohibition against any activity not consistent with its current wild and natural state. Commissioner Masi noted past difficulties with such arrangements including the difficulty of policing the area relative to prohibited uses, and indicated that the area should be deeded to the town. Plaintiff argued that to do so would result in a loss of taxes to the town. Commissioner Masi responded that such a loss had already been contemplated by the commission. Commissioner Skyrme further noted that the easement as proposed would prohibit park and/or recreations areas. Plaintiff argued that ". . . You don't have a population density that would require recreation," to which Commissioner Skyrme responded, "Not today." (Record, Item 17, pp. 3-4).
Discussions then returned to the topic of Old Baird Road and responsibility for its care; defendant's position that the regulations demand its improvement prior to approval and plaintiff's position as to the invalidity of the regulations in question. (Record, Item 17, pp. 4-5).
Commissioners then raised the issue of erosion and sedimentation control; and, specifically, the need' for a detention basin. Commissioner Masayda noted the relation of this issue to the issue of improvements to Old Baird Road, the resulting drainage off the improved road, and the impact of such drainage. The information necessary to resolve the question of the detention basin was, therefore, not available at the time of the meeting. (Record, Item 17, pp. 5-6).
Discussions then returned to the issue of the Inland/Wetlands decision. Defendant's counsel indicated that, that particular concern might be resolved shortly, based on an apparent agreement between the parties whereby plaintiff would provide certain drainage information to the commission which, it was anticipated, would be acceptable and would result in a favorable report. The agreement had yet to be signed and returned to court. Plaintiff wished to await the final decision by the Wetland commission. The defendant commission decided to act with the information it had before it. (Record, Item 17, pp. 6-9). CT Page 7906
The defendant commission ultimately denied plaintiff's application, citing the following reasons: (1) The failure to comply with Section 4.3.10 of the Subdivision Regulations
relative to the improvement of Old Baird Old; (2) The failure to comply with Section 4.12.1 of the Subdivision Regulations
regarding dry water and sewer lines for future connection; (3) The failure to comply with Section 4.16 of the SubdivisionRegulations regarding open space, park, and recreation areas andSection 4.16.2 regarding solar access in conjunction with open space requirements; (4) The failure to comply with Section 4.4of the Subdivision Regulations regarding sidewalks and ramps, allegedly based on "further information from the Zoning Officer . . ."; (5) The denial of the Inland/Wetlands application of plaintiff; and (6) Insufficient information relative to drainage, erosion, and sedimentation control. (Record, Item 17, pp. 9-11).
 III
LAW AND ANALYSIS
At the outset it should be noted that the issue of "aggrievement" was resolved at trial to the satisfaction of the defendant and the court with the production of evidence by the plaintiff establishing it's ownership of the subdivision property in question. Winchester Woods Associates v. Planningand Zoning Commission, 219 Conn. 303, 308 (1991).
Generally, the approval of a subdivision plan depends upon its compliance with the regulations adopted by the planning and zoning commission. The commission considers the plan submitted in its administrative capacity, and is controlled by the regulations it has previously adopted. Its approval or disapproval of a subdivision plan depends upon the existing regulations. Compliance with the regulations requires approval; while failure to comply requires disapproval. Beach v. Planningand Zoning Commission, 141 Conn. 79, 83-85 (1954). The usual issue on appeal from a denial of an application for a subdivision plan is, then, whether any of the reasons given by the planning commission are supported by the language of the regulations and by the evidence contained in the record.Blakeman v. Planning Commission, 152 Conn. 303, 306-308 (1965).
In this matter the defendant's first reason for the denial of plaintiff's subdivision plan is that it fails to comply with CT Page 7907Section 4.3.10 of the Subdivision Regulations; in that, there exists an abutting town street, Old Baird Road, which is clearly inadequate in a number of significant respects. The town has not approved expenditures for its improvement, and the plaintiff's subdivision plan does not provide for any repair of or improvement to the road.
Plaintiff admits non-compliance with said regulation, and, further, that said non-compliance is supported by the record. Plaintiff argues, however, that it cannot be compelled to make improvements to a road which is not part of its subdivision plan, and which is owned and controlled by the town. It citesSection 8-25 of the General Statutes as its authority for the proposition that regulations which require improvements to abutting town roads which are not part of the subdivision lands, are invalid. Plaintiff claims the statute authorizes regulations dealing with the land robe subdivided and not "off site" areas. A planning commission can only issue regulations consistent with the powers expressly granted to it by enabling legislation. Avonside, Inc. v. Zoning and Planning Commission,153 Conn. 232, 236 (1965).
The defendant's response is threefold: first, that the appropriate remedy for challenging the validity of its regulations is a motion for a declaratory judgment rather than an administrative appeal; second, that the regulation in question is authorized by Section 8-25; and third, the plaintiff failed to avail itself of certain statutory remedies prior to filing its administrative appeal. Defendant concedes that Old Baird Road is a town road, and that it is not part of the property to be subdivided.
Defendant characterizes the claim that the regulations exceed the statutory authority as a "wholesale attack" on the regulations, and, citing such cases as Bombero v. Planning andZoning Commission, 218 Conn. 737 (1991), argues that a declaratory judgment action is the appropriate vehicle for such an attack.
Plaintiff's claim, however, hardly qualifies as a "wholesale attack." In Bombero, the Court did hold that a general attack on such regulations combining constitutional grounds of vagueness and nonconstitutional grounds should proceed byway of declaratory judgment. The Court also alluded to many instances where the invalidity of such regulations could CT Page 7908 be raised by way of appeal.
"We hold only that where, as here, the plaintiff mounts a general attack on the legislative enactment of a regulation,primarily based on constitutional vagueness grounds, and combines therewith nonconstitutional grounds for the regulation's invalidity, he must do so by a declaratory judgment action . . ." (Emphasis added.) Bombero, supra, p. 745.
Plaintiff's claim, in this case, is straightforward and nonconstitutional in nature. This court is satisfied that such a claim, that an agency has exceeded its statutory authority, is a proper subject for an administrative appeal. Finn v. Planningand Zoning Commission, 156 Conn. 540 (1968); Sonn v. PlanningCommission, 172 Conn. 156, 158-159 (1976); Housing Authority v.Popandrea, 222 Conn. 414, 424 (1992); Persons Payne v. FairfieldHills Hospital, 215 Conn. 675, 679 (1990).
The next issue, whether or not Section 8-25 authorizes regulations requiring "off-site" improvements by applicants, has been the object of substantial litigation with authorities lining up on both sides.
Authorities in support of plaintiff's position note the apparent clear and unambiguous language of Section 8-25
authorizing regulations dealing with "the land to be subdivided" as opposed to "off-site" improvements such as, in this case, improvements to Old Baird Road.
"There is nothing in 8-25 that authorizes a planning commission to require a developer to improve an existing abutting public highway where no intersecting subdivision streets are being created." Property Group, Inc. v. Planningand Zoning Commission, 29 Conn. App. 18, 23 (1992). See alsoSowin Associates v. Planning and Zoning Commission, 23 Conn. App. 370,376-377 (1990), and Timber Trials Corp. v. Planningand Zoning Commission, 1992 Ct. Sup. 8675, 7 Conn. Super. Ct. Rpts. 1178 (1992). In this matter there is no evidence of intersecting subdivision streets being created by plaintiff's plan.
As both parties point out, though the issue has been raised in a number of forums including our Supreme Court, it has yet to be resolved. See Property Group, Inc. v. Planning and ZoningCommission, 226 Conn. 684 (1993). CT Page 7909
The defendant argues that since our Supreme Court has not rendered regulations like those in question here invalid, despite the opportunity to do so; this court should, likewise, refrain from doing so. Defendant also notes Justice Berdon's dissent in Reed v. Planning and Zoning, 12 Conn. App. 153, 159-163
(1987) and case law indicating that agencies such as Inland/Wetland agencies, were authorized to regulate "off-site" areas. Defendant, further, urges the court to entertain every presumption in favor of the validity of the regulation as the law requires.
After a review of all the materials cited in both briefs, this court finds the well reasoned opinion of Judge Fuller inTimber Trails to be the more persuasive position, and does adopt the reasoning expressed therein in finding that the regulation in question as applied in this matter exceeds the authority of the enabling statute, Section 8-25. This statute does not authorize the enactment of a regulation which requires "off-site" improvements to a public highway as a condition for approval of a subdivision application.
"The provisions in Section 8-25 require the land to be subdivided to be able to be safely used for building purposes, and defects in a public highway outside the subdivision are not a problem with the land to be subdivided. Moreover, approval of the subdivision rarely affects the safety level of the existing road. As recognized in the Pope decision . . . a planning commission should not be able to avoid its statutory obligations to maintain adequate public highways by placing the expense of doing so on owners of undeveloped land along the highway, giving a free ride to the public at large and owners of existing developed land along the road." Timber Trails, p. 8683.
Defendant's argument that plaintiff had a duty to appeal the town's decision not to improve Old Baird Road, is also without merit. Defendant offers no legitimate factual basis for such an appeal, nor authority requiring plaintiff to file such an appeal consistent with principles of "exhaustion." Furthermore, based upon this court's preceding ruling, improvements to Old Baird Road were not the concern of the plaintiff, and constitute an issue separate and apart from plaintiff's application for a subdivision.
Plaintiff argues that Defendant's second reason for denial CT Page 7910 of the subdivision application should be resolved in the same fashion as the first, since it too constitutes an "off-site" condition. This second reason for denial is based on Section 4.12.1 of the regulations which require, among other things, that ". . . In areas where public water supply and/or sanitary sewage system are not available, dry lines, shall be installed in newand/or reconstructed streets . . ., when in the opinion of the Water and Sewer Authority the extension of lines to the area will be accomplished before the 10 year life span of the street pavement." (Emphasis added.)
In this matter the Water and Sewer Authority was of the opinion that such an extension would be accomplished within 10 years. Its also clear that in the context of this case, compliance would require the plaintiff to install dry lines in conjunction with its reconstruction of Old Baird Road. (Record, Item 10).
Since compliance with this regulation would require construction to an "off-site" area, such regulation as it applies here is invalid and compliance is not required as a precondition to the granting of an application for subdivision.
The defendant argues that the requirement to provide water and sewer lines can be met totally independent of the requirement to construct the road itself. In this case, as plaintiff notes, each lot will have its own well and septic system at substantial expense to plaintiff. Though Section 8-25
authorizes a regulation that compels the provision for water and sewage, it does not authorize the construction of water and sewer lines off the site of the subdivision, or in a public highway.
 "Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or public safety, that proper provision shall be made for water, drainage, and sewage . . ." Section 8-25 of the General Statutes.
The third reason for the denial of plaintiff's application is the alleged failure to comply with Section 4.16 of theSubdivision Regulations which concerns provisions for parks, playgrounds, recreation areas, and open spaces. Plaintiff concedes the validity of this regulation. CT Page 7911
The failure to comply with "open space" requirements was raised at the first meeting of the commission on December 1, 1993, but was not considered in any detail. At the final meeting of January 27, 1994, this concern was again raised and discussed at length. Prior to the meeting of January 27, 1994, the entire record, including all maps submitted, was devoid of any effort by the plaintiff to address this issue.
At the final meeting, in response to "open space" concerns, plaintiff proposed, apparently for the first time, maintaining (6) acres as a conservation easement in perpetuity, prohibiting any activity not consistent with its wild and natural state. Members of the defendant commission expressed dissatisfaction with this proposal, noting difficulties with such easements in the past, including the problem of policing such an easement; that the better resolution would be to deed the property to the town despite the acknowledged loss of tax revenue; and that the easement, as proposed, would prohibit the introduction of park and/or recreation areas in anticipation of future increases in population. Furthermore, the regulation provides that, in determining the need for parks, playgrounds, etc., the commission should be guided by, among other things, "any existing parks, playgrounds, recreation areas and open spaces in the neighborhood." As commissioner Skyrme noted, "There is no park or recreation area anywhere in that part of town and you certainly don't want any children in the area going off down Route 6." (Record, Item 17, p. 4). Plaintiff argued that given the present population density, recreation areas are not necessary, to which Commissioner Skyrme responded, "Not today."
Clearly, commissioners were not satisfied with the lack of attention to "open space" requirements, nor with the proposal of an easement. Though plaintiff now claims that the members of the commission did not explain any inadequacies with the proposal, the record, as indicated, would suggest otherwise.
Plaintiff argues further that the (6) acres proposed for the easement was an adequate remedy for the concerns raised; that open space is plentiful throughout the sparsely populated, largely undeveloped subdivision; and that the defendant failed to designate open space area as it is empowered to do.
The record is clear to this court, however, that: (1) The plaintiff's subdivision plan included no provision for CT Page 7912 compliance with Section 4.16 of the regulations; (2) The proposed conservation easement was not acceptable to the defendant for valid, expressed reasons; and (3) Plaintiff never responded to suggestions that land be deeded to the town to satisfy the regulation, nor that recreation and/or parks be designated. The denial of plaintiff's application due to the failure to satisfy Section 4.16, therefore, appears to be a valid exercise of the defendant's discretion in its administrative capacity, and based upon the record.
"The conclusions of the commission must stand if even one of the stated reasons is reasonably supported by the record."R.B. Kent and Son, Inc. v. Planning Commission,21 Conn. App. 370, 373 (1990).
Other reasons given by the defendant for denial of the application have little support in the record.
The fourth reason cited, failure to comply with Section 4.4
of the regulations, regarding provisions for sidewalks and ramps requires little discussion. The record is virtually devoid of any reference to this regulation other than in defendant's concluding list of reasons for denial. In support of this reason reference is made to "further information from the zoning officer . . .," but no explanation is given as to the nature of the information the zoning officer had, or the reasons for his conclusions. Furthermore, the plaintiff was given absolutely no opportunity to respond to the defendant's concerns in this area.
"The sparsity of reliable evidence in this record is underscored by the fact that the commission . . . acted in a manner which placed its data base beyond the plaintiff's scrutiny. Nowhere in the public hearing, or at any other time and place, was the plaintiff afforded a fair opportunity to hear the commissioner's fears and to attempt to allay them." Feinsonv. Conservation Commission, 180 Conn. 421, 428 (1980).
For similar reasons, failure to comply with solar access requirements in conjunction with the "open space" regulations, is not a valid basis for denial of plaintiff's application. It was never a topic of concern or discussion.
The defendant lists as its 5th reason for denial, the Inland/Wetland agency denial of plaintiff's application. There is no question that the defendant had the right to give "due CT Page 7913 consideration" to the report filed by the Wetlands agency, Thomav. Planning Commission, 31 Conn. App. 643 (1993); but, again, the record is devoid of any discussion regarding aspects of the decision the defendant agreed with or adopted and the reasoning for so doing. The only discussion, in this regard, concerned the extent to which the report had to be considered in conjunction with Plaintiff's application.
In fact, the Wetlands denial was based on insufficient information from the plaintiff; a circumstance which was subsequently remedied, resulting in plaintiff's application, eventually, being approved. At the time of the last meeting, both parties were aware that the necessary information would be forthcoming shortly, and it was anticipated that a second favorable report would issue from the agency. (Record, Item 17, p. 8). Again, the plaintiff was left in the position of having no opportunity to hear the specific concerns, or to respond in any intelligent fashion.
"Judicial review of administrative process is designed to assure that administrative agencies act on evidence which is probative and reliable and act in a manner consistent with the requirements of fundamental fairness." Feinson, supra, p. 429.
The final reason for denial appears to be something of an afterthought on the part of the defendant. It is a vague and non-specific reference to insufficient information regarding such things as "retention basin" size and location. This reason would not stand on its own as a basis for denial, given requirements of due process. It is difficult to discern exactly which regulation or regulations the plaintiff is alleged to have violated in this regard, and in precisely what manner. Consequently, it would be difficult, as plaintiff notes, to respond in any appropriate fashion, even if it were given the opportunity to do so.
 IV
Conclusion
For the foregoing reasons, this court finds that the record is sufficient to support defendant's denial of plaintiff's application for a subdivision based on its failure to comply with Section 4.16 of the Subdivision Regulations. Plaintiff's appeal, therefore, is dismissed. CT Page 7914
FASANO, J.