[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION FACTS
The plaintiffs, all of whom are property owners in the town of Newtown, bring this appeal challenging the re-zoning of approximately 2500 acres by the defendant, Newtown Planning and Zoning Commission.
The change of zone, which affects approximately 2300 parcels (ROR 68, p. 3) impacts properties previously located in one-half acre zones (R-1/2) and one acre zones (R-1).
All of the parcels subject to the re-zoning are now in either a two acre (R-2) or one acre zone.
A substantial portion of the re-zoned area is located within an Aquifer Protection District (APD) established by the town of Newtown in 1981.
The Aquifer Protection District is an overlaw zone created for the purpose of protecting ground water quality and guaranteeing a supply of safe drinking water. CT Page 14320
The area within the APD requires a single-family dwelling to be constructed on parcels of two acres or more. This constitutes a permitted use. (Section 4.04.200(B).)
The two acre minimum applies, notwithstanding the acreage mandated in the underlying zone.
The regulations provide, however, that the minimum acreage requirement can be varied through resort to the special exception procedure (Sections 4.04.400 and 4.04.500).
The defendant, Planning and Zoning Commission, held an initial public hearing on December 2, 1999, and a second hearing on February 3, 2000. (ROR 4.)
Elizabeth Stocker, Newtown's Director of Community Development, addressed the Commission on both occasions as an advocate of the "up-zoning" proposal.
She referred to information considered by the Commission during its extensive pre-hearing consideration of the "up-zoning," and placed substantial material into the record. (ROR 4, pp. 2-5.)
The Commission devoted additional time, following the close of the public hearing on February 2, 2000, to discussing the up-zoning proposal.
It voted unanimously (5-0) to adopt the zone change on September 7, 2000.
A legal notice was published on September 18, 2000.
In adopting the zone change, the Commission cited three basic reasons in support of the up-zoning in its resolution (ROR 68):
 1. The minimum lot size requirements of one-acre in the sewer avoidance areas and two acres in the Aquifer Protection District provide a means to enforce the town's sewer avoidance policy, and protect the Pootatuck Aquifer.
 2. By allowing housing densities that are consistent with the minimum recommended land area necessary to support the installation and long-term operation of on-site septic systems, the Newtown Planning Zoning Commission can help assure that they will function as a reliable method of waste water disposal.
3. Long-term protection of existing and potential sources of CT Page 14321 potable water are important goals of this proposal. The cumulative impact of continuing development . . . can result in deterioration of water quality.
From this action, the plaintiffs instituted this appeal.
The plaintiff, Janice Booth, is the owner of property at 30 Button Shop Road, consisting of 1.3 acres (Exhibit 1 and Exhibit 2).
The plaintiff, Richard Haight, is the record owner of 99 Churchill Road, a parcel consisting of 3.25 acres (Exhibit 3).
Alice Poundstone and William E. Barella own 78 Waterview Drive, a .10 acre lot, which contains a dwelling.
Mario Nestri owns two parcels, 157 and 159 Lakeview Terrace (Exhibit 5 and Exhibit 6), which are separated by a public street.
One parcel consists of a .54 acre lot, while the second is .8 acres, with a residence on the site.
The plaintiff, Carmine Renzulli (Exhibit 7), owns thirty-five acres designated as 79 Churchill Road and 125 Walnut Tree Hill Road.
He also owns a 2.88 acre parcel, 70 Churchill Road.
The Booth and Haight properties are located within the Aquifer Protection District (APD). (ROR 123.)
The Renzulli property at 70 Churchill Road is in the APD along with eight acres of the thirty-five acre parcels.
The Poundstone and Barrella property is outside the APD, as is the Nestri property.
Twenty-seven acres of the Renzulli property are not contained within the APD.
In this appeal, the plaintiffs claim that the up-zoning by the Newtown Planning and Zoning Commission is not supported by the record and that the public hearing process lacked fundamental fairness and failed to comply with the requirements of due process.
 AGGRIEVEMENT
All of the plaintiffs own property within the area affected by the CT Page 14322 change of zone voted by the defendant, Newtown Planning and Zoning Commission.
The Commission freely concedes that the plaintiffs are statutorily aggrieved by virtue of their ownership of property impacted by the zoning changes. Timber Trails Corporation v. Planning Zoning Commission,222 Conn. 374, 376 n. 3 (1992); Cole v. Planning Zoning Commission,30 Conn. App. 511, 515 (1993).
Aggrievement is jurisdictional and a prerequisite for maintaining an appeal. Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 307 (1991).
The Commission argues, however, that even though statutory aggrievement is acknowledged, the plaintiffs lack standing to challenge the entire zone change, but are limited to addressing the portions of the changes which relate to their individual properties.
The defendant cites no authority for this proposition other thanShaskan v. Waltham Industries Corporation, 168 Conn. 43, 49 (1975), a case involving a challenge to the constitutionality of an attachment on real property where considerations of "statutory aggrievement" and "classical aggrievement" were not germane.
The defendant's position evokes nostalgia for the now discredited rule requiring that a general attack on the validity of land use regulations be made through resort to the declaratory judgment procedure rather than by way of an administrative appeal. Cioffoletti v. Planning ZoningCommission, 209 Conn. 544, 563 (1989).
This rule was expressly abandoned in Stafford Higgins Industries, Inc.v. Norwalk, 245 Conn. 551, 582 (1998), where a tax appeal was combined with claims seeking declaratory relief.
A plaintiff may be required to resort to a declaratory judgment where regulations are challenged as unconstitutionally vague. Bombero v.Planning Zoning Commission, 218 Conn. 737, 745 (1991).
However, where a plaintiff is determined to be statutorily aggrieved, that person may challenge the adoption of regulations of general application without the necessity of proving that any injury has been sustained. Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 671
(1989) (Shea, J., dissenting); Lewis v. Planning Zoning Commission,62 Conn. App. 284, 297 (2001).
To accept the position advanced by the defendant, Newtown Planning and CT Page 14323 Zoning Commission, would be to require a plaintiff, de facto, to prove classical aggrievement even in a situation in which statutory aggrievement has been clearly demonstrated.
The court finds no authority for the proposition that a statutorily aggrieved plaintiff must prove a specific and identifiable injury before proceeding with an appeal.
Because all of the plaintiffs are statutorily aggrieved, it is unnecessary to determine whether any or all of the plaintiffs can also demonstrate classical aggrievement. McNally v. Zoning Commission,225 Conn. 1, 8 (1993).
It is found that all plaintiffs are statutorily aggrieved and have standing to pursue this appeal.
 STANDARD OF REVIEW
When it acts to amend its existing regulations, a zoning commission sits in a legislative rather than in an administrative or quasi-judicial capacity. D J Quarry Products, Inc. v. Planning Zoning Commission,217 Conn. 447, 450 (1991).
It has broad discretion and is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. Kaufman v. ZoningCommission, 232 Conn. 122, 150 (1995).
When acting as a legislative body, a commission is the formulator of public policy, and its discretion is much broader than that of a board sitting in an administrative or quasi-judicial capacity. Malafronte v.Planning Zoning Board, 155 Conn. 205, 209 (1967).
Zoning must be sufficiently flexible to meet changing conditions, and a commission's action should not be disturbed by a court unless it has acted arbitrarily or illegally. Burnham v. Planning Zoning Commission,189 Conn. 261, 265 (1983).
Conclusions reached by the Commission must be upheld if they are reasonably supported by the record. Questions concerning the credibility of witnesses and the determination of issues of fact are matters solely within the province of the land use agency. Protect Hamden/North Havenfrom Excessive Traffic and Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 543 (1991).
The question is not whether the trial court would have reached the same CT Page 14324 conclusion, but whether the record before the agency supports the decision reached. Calandro v. Zoning Commission, 176 Conn. 439, 440
(1979).
The test of the action of the Commission is twofold: (1) the zone change must be in accord with the comprehensive plan, and (2) it must be reasonably related to the normal police powers enumerated in § 8-2 of the General Statutes. First Hartford Realty Corporation v. Plan ZoningCommission, 165 Conn. 533, 541 (1973). The comprehensive plan of a community consists of the zoning regulations themselves and the zoning map. Burnham v. Planning Zoning Commission, supra, 267.
The Commission's decision must be sustained if even one of the stated reasons is sufficient to sustain it. Goldberg v. Zoning Commission,173 Conn. 23, 25 (1977).
 THE COMMISSION'S DELIBERATIONS AND CONDUCT OF THE PUBLIC HEARING PROCESS DID NOT VIOLATE THE PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS
The plaintiffs claim that the proceedings before the Commission violated their right to a fair hearing and failed to comply with procedural due process guarantees.
They claim the Commission received information from Robert Hurst, an employee of the State of Connecticut Department of Environmental Protection (DEP), and Mark Cooper, the Newtown Director of Health, in an improper and exparte fashion.
They further contend that they were denied an opportunity to cross-examine Mr. Hurst and Mr. Cooper at either public hearing, and that the members of the Commission should have responded to questions raised at the hearing and submitted to questioning.
Both Mr. Hurst and Mr. Cooper, in comments and in written documents submitted to the Commission, supported up-zoning or upgrading of the minimum lot size requirements.
A review of the record reveals two communications from Mr. Hurst, both of which occurred well before either of the two public hearings. (ROR 63 and 66.)
On January 21, 1999, as part of the Commission's ongoing discussion concerning possible re-zoning, Mr. Hurst distributed a document to the Commission entitled, "Protecting Connecticut's Groundwater," which he had helped develop. CT Page 14325
At that same meeting, Mr. Cooper provided background information concerning sewers and the problems associated with small lots in subdivisions not serviced by sewers.
The comments of both individuals were noted in the minutes of the Commission's meeting and were, therefore, matters of public record. (ROR 66, p. 2.)
Mr. Hurst, in follow-up communication with the Director of Community Development, Elizabeth Stocker, supplemented his January 21, 1999 information. (ROR 63.)
This written communication was received on March 1, 1999.
The documents generated by Mr. Cooper, Newtown's Director of Health, include a memorandum on sewer avoidance dated May 27, 1993 (ROR 47), and a memorandum to Elizabeth Stocker dated August 19, 1996 (ROR 113).
The only document which is reasonably contemporaneous to the public hearing process is a letter dated January 4, 2000, to Carmine Renzulli (ROR 22), one of the plaintiffs in this appeal.
Neither Mr. Hurst nor Mr. Cooper testified at the public hearings, and the record does not reveal that either provided information or material to the Commission following the close of the February, 2000 public hearing.
Hearings before municipal land use agencies are informal and are conducted without regard to strict rules of evidence. McCrann v. TownPlan Zoning Commission, 161 Conn. 65, 77 (1971).
However, the proceedings must not violate fundamentals of natural justice, and no one may be denied the right to produce relevant evidence or to cross-examine witnesses. Grimes v. Conservation Commission,243 Conn. 266, 274 (1997); Miklus v. Zoning Board of Appeals,154 Conn. 399, 406 (1967).
Public hearings play an essential role in providing a forum for citizens to express their views. Couch v. Zoning Commission, 141 Conn. 349,357 (1954). Due process requires that the public have access to the facts on which the agency is asked to act and the opportunity to offer rebuttal evidence. Reed v. Planning Zoning Commission, 208 Conn. 431, 433
(1988); Connecticut Fund for the Environment v. Stamford, 192 Conn. 247,249 (1984). CT Page 14326
Because municipal land use bodies are composed of laymen, they are entitled to rely on professional and technical assistance in carrying out their responsibilities. Spero v. Zoning Board of Appeals, 217 Conn. 435,444 (1991); Hawkes v. Town Plan Zoning Commission, 156 Conn. 207, 212
(1968).
This information may, under appropriate circumstances, be communicated in executive session. Kyser v. Zoning Board of Appeals, 155 Conn. 236,249 (1967).
Unlike a judicial body, a land use board may act upon facts known to it even if they are not produced at a hearing. Grimes v. ConservationCommission, supra, 276. However, an adverse party must have an opportunity to rebut information at an appropriate stage of the proceedings. Feinson v. Conservation Commission, 180 Conn. 421, 428-29
(1980); Parsons v. Board of Zoning Appeals, 140 Conn. 290, 292-93
(1953).
When a claim of lack of due process or improper procedure is raised, the burden is on the party seeking to show that the Commission acted improperly. Murach v. Planning Zoning Commission, 196 Conn. 192, 205
(1985).
The plaintiffs have failed to demonstrate that the procedures employed by the Commission in adopting the zone changes failed to comply with the demands of due process or violated concepts of natural justice.
Although only required by statute to hold a single public hearing on the change of zoning regulations,[1] the Commission conducted two hearings, one in December of 1999, and a second on February 3, 2000.
Communications from Mr. Hurst and Mr. Cooper were received at public meetings and were a matter of public record well before the time of the public hearings.
The plaintiffs concede that materials supplied by Mr. Cooper "may or may not" have had any relevance to what he told the Commission. (Plaintiffs' Brief, p. 18.)
The Commission had a right, and probably a responsibility, to seek input from the municipal director of health when analyzing the sewer avoidance policy.
All of the information was public record, and one document (ROR 22) was generated at the request of one of the plaintiffs. CT Page 14327
Neither Mr. Hurst nor Mr. Cooper testified at the public hearings, and their presence was not requested, formally or informally, by any participant in the hearings.
While a land use agency cannot consider materials submitted by a party after the close of a public hearing, thus denying an opposing party the ability to inspect documents or cross-examine witnesses; Waddell v. Boardof Zoning Appeals, 136 Conn. 1, 9 (1949); Norooz v. Inland WetlandsAgency, 26 Conn. App. 564, 569 (1964); all of the communications in this instance occurred months and years before the public hearings.
Furthermore, neither Mr. Hurst nor Mr. Cooper was a party to the proceeding and was not present at the hearing to be cross-examined.
The conduct of the hearings was fair, and interested persons were not denied the right to be heard or the right to submit evidence to the Commission.
Elizabeth Stocker, the Director of Community Development, testified and was available to respond to questions and to supply information.
Ms. Stocker produced documents during the course of the hearing in providing a detailed history of the proposed zone changes. (ROR 4, pp. 2-4.)
An opportunity between the first and second public hearing was available to anyone who wished to provide additional input.
The plaintiffs have pointed to no statute or regulation providing a right to question members of a land use agency during the course of a public hearing.
Questions could have been directed to the Director of Community Development., who made a detailed presentation at both public hearings. (ROR 4.)
The record does not reveal any effort by the Commission to prevent the introduction of any evidence by opponents of the zone change during the course of the public hearing.
The hearing process was fair and gave to all interested citizens a meaningful and timely opportunity to be heard.
 THE DECISION TO RE-ZONE LAND BOTH WITHIN THE AQUIFER PROTECTION DISTRICT (APD) AND OUTSIDE THE APD, IS SUPPORTED BY THE RECORD CT Page 14328
The plaintiffs contend that 2315 properties were affected by the Commission's re-zoning (ROR 68, p. 3).
Of these properties, 996 are located within the Aquifer Protection District, while 1319 are outside the overlay zone.
All of the land contained within the Aquifer Protection District was re-zoned to a two acre minimum lot size requirement from either a one acre or a one-half acre minimum.
The action of the Commission brings the minimum lot area in the underlying zone, in compliance with the minimum required in the Aquifer Protection District.
The land outside the Aquifer Protection District was upgraded from a one-half acre minimum to a one acre minimum.
The Commission cited two basic reasons for the action it had taken: (1) protection of present and future drinking water supplies, and (2) maintenance of a sewer avoidance policy.
Section 8-2 of the General Statutes permits a commission to adopt zoning regulations with "reasonable consideration for the protection of existing and potential public surface and ground drinking water supplies."
The record provides ample and abundant support for the two acre zone within the Aquifer Protection District.
The two acre minimum within the overlay zone had been established prior to the upgrade of the underlying zone, except where the requirement meets the criteria for a special exception.
The action of the Commission is consistent with the recommendations of the State Department of Environmental Protection (DEP), which recommends a density of one dwelling unit per two acres in areas over high yield aquifers (ROR 20, pp. 3-6).
In pursuing its sewer avoidance policy, the Commission is naturally concerned about the possibility of septic system failures.
Concerning the parcels located outside the Aquifer Protection zone, the Commission had before it the specific recommendations of the health director concerning lot size requirements (ROR 113). CT Page 14329
Recognizing that many nonconforming parcels would be created by the adoption of the up-zoning proposal, the Commission was cognizant of the sewer avoidance policy and that implementation of that policy would require larger lot sizes (ROR 20; ROR 47).
The record supports the action taken by the Commission for all of the reasons stated in the resolution adopting the change of zone.
The appeal of the plaintiffs is dismissed.
Radcliffe, J.