EDWARD WEIGEL ET AL. *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF
WESTPORT ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, JS.

Argued November 4, 1970—decided January 13, 1971

*Bourke G. Spellacy,* with whom were *Thomas G. Dennis* and, on the brief, *Stuart N. Updike,* for the appellants (plaintiffs).

*Alan H. Nevas,* for the appellees (defendant Chesebrough-Pond's, Inc., et al.).

*Harry H. Hefferan, Jr.,* with whom, on the brief, were *Lawrence P. Dennin, Jr.,* and *William R. Pascucci,* for the appellee (named defendant).

RYAN, J.   On January 7, 1969, the defendants Chesebrough-Pond's, Inc., hereinafter referred to as Chesebrough, and Elizabeth Gordon, applied to the defendant commission for an amendment to the town plan of development to designate a tract of land 21.36 acres in area as suitable for design development use; for the rezoning of said tract from residence A to design development district No. 4-A; and for a special permit to allow Chesebrough to establish a research and development laboratory and pilot plant on this tract.   On January 30, 1969, the commission held a public hearing on the applications. On February 11, 1969, all three applications were approved by the commission.   It amended the Westport town plan of development to designate the 21.36-acre tract as suitable for "design development use with open space buffers"; it rezoned the subject property from residence zone A to design development district No. 4-A; and it granted a special permit under chapter 4A and chapter 9 of the Westport zoning regulations to allow the layout and construction of a combination office building and research laboratory on plans submitted by Chesebrough. The plaintiffs appealed to the Court of Common Pleas and from the judgment of that court dismissing their appeals the plaintiffs have appealed to this court.

The plaintiffs claim that the commission acted illegally, arbitrarily and in abuse of its discretion in rezoning the subject property and that its action was not in conformity to a comprehensive plan and con-

stitutes spot zoning. A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential uses of the properties. It may be found in the scheme of the zoning regulations themselves. *Stiles* v. *Town Council*, 159 Conn. 212, 227, 268 A.2d 395. The property in question consists of 21.36 acres of undeveloped land fronting on Greens Farms Road. It lies fairly close to the Connecticut Turnpike between two interchanges in a residence A zone. The Westport zoning regulations provide for the establishment of design development districts under detailed regulations. Such a zone could be established in any district and is in the nature of a special use district. *Furtney* v. *Zoning Commission*, 159 Conn. 585, 598, 271 A.2d 319. In approving the change of zone the commission considered the necessity constantly to reevaluate the comprehensive plan; the location of the site between the railroad and the Connecticut Turnpike and its compatibility with the residential area; and the location of sanitary sewers. The commission also considered the conformance of the zone change to the town plan and the general welfare of the town; conserving the value of existing buildings; the health of the community; the capacity of highways to handle traffic; and storm drainage.

The circumstances and conditions in matters of zone changes and regulations are peculiarly within the knowledge of the zoning commission. Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority. *Kutcher* v. *Town Planning Commission*, 138 Conn. 705, 710, 88 A.2d 538. The facts

before the commission were such as to support, fairly and reasonably, its conclusion that the change of zone applied for would permit the use of the land for a purpose which was suitable and appropriate and would create a new zone which was in keeping with the orderly development of the comprehensive plan for the zoning of the entire town. *Furtney* v. *Zoning Commission,* supra, 599. The conclusion of the trial court that the change of zone did not violate the comprehensive plan of the town of Westport was correct.

Since the change of zone is in accordance with the comprehensive plan, the claim that it constitutes spot zoning is without merit. *Sheridan* v. *Planning Board,* 159 Conn. 1, 18, 266 A.2d 396; *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 12, 202 A.2d 241.

Chesebrough is a New York manufacturing corporation whose principal products include hair and makeup products, perfumes and colognes, patent medicines, hospital products, deodorant and beauty cream products. It proposes to build on the tract of land in question a two-story structure having a total floor area of approximately 94,000 square feet to house a computer-research laboratory and pilot plant. The function of the pilot plant is the manufacture of products for market-testing purposes. The manufacturing activity will be less than 5 percent of the total use conducted on the premises and all manufactured products will be the direct outcome of the research activity conducted on the premises.

To carry out this plan, Chesebrough applied to the commission for a special permit to use the property for specific purposes. The commission granted a special permit under chapter 4A and chapter 9 of

the Westport zoning regulations to allow the layout and construction of a combination office building and research laboratory, parking areas, roadways, and other site improvements as shown on plans submitted by Chesebrough.

The plaintiffs claim that the commission had no authority to grant the special permit because it was in violation of the Westport zoning regulations. To determine this question it is necessary to examine the regulations. In 1965 chapter 4A concerning design development districts was adopted. "Such districts are designed for commercial and industrial development within the town by proper zoning standards so that the health, safety and general welfare are insured as such development occurs. The uses in the Design Development Districts as may from time to time be established, shall be allowed only by special permit as provided for in chapter 9." Amendment No. 42, adopted in 1966, added design development district No. 4 to chapter 4A. The permitted uses in this district include research laboratories, office buildings and uses, and appurtenant and accessory activities for them. Chapter 2 § 8 of the regulations entitled "Definitions" was amended in 1965 by adding thereto a definition of "Research Laboratory".[1] Chapter 2, entitled "General Requirements", contains in § 5 thereof a prohibition that "[w]ithin the Town of Westport, no land, building or other structure shall be used for any of the following purposes. . . . J. Manufacture, processing or preparation of . . . alcohol . . . chemi-

---

[1] "AMENDMENT # 29

Chapter 2 – Section 8: Add 'I' – Research Laboratory:

For the purpose of these regulations, Research Laboratory shall mean any use devoted to scientific research and development of manufactured products, processed products, compounded products, and

cals . . . disinfectant . . . fat . . . flavoring . . . oils . . . perfume . . . soap". The plaintiffs claim that the commission violated this regulation because the special permit allows Chesebrough to manufacture products which are prohibited in every zone of the town of Westport.

While the record does not contain a full list of the products to be manufactured, the trial court found that among the products which Chesebrough intends to manufacture in its Westport facilities are cosmetics, creams and perfumes. This finding is not disputed by the defendants, but they maintain that chapter 2 § 5 (J) pertains only to facilities whose major operation involves conditions prohibited therein and that amendment No. 29 deals with manufacturing only as an incidental use of property to which the prohibitions of chapter 2 § 5 (J) do not apply. We note, however, that subsection b of amendment No. 29 allows manufacturing to constitute up to "75 percent of the total use conducted on the premises". This hardly indicates that it was the intent of the regulation that manufacturing be only an incidental use.

The adoption of zoning regulations is a legislative process and in interpreting the meaning of these

---

any investigative activities of a scientific nature. It may also include a combination of research activities and manufacturing activities provided that:

    a. the manufacturing is the direct outcome of the research activity conducted therein;

    b. the manufacturing activity does not constitute more than 75% of the total use conducted on the premises (measured by such criteria as floor space allocation, man-hour consumption, operating expenditures, personnel);

    c. the manufacturing activity is light in intensity;

    d. combinations containing manufacturing uses which constitute more than 25% of the total use shall not exceed 25,000 sq. ft. in total floor area."

regulations this court's function is to determine the legislative intent. *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 556, 235 A.2d 643; *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785. Where the language of the regulation is plain and unambiguous the intention of the commission is to be determined from its language. *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886; *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 192, 239 A.2d 534. Chapter 2 § 5 is entitled "Prohibited Uses—All Districts" and states in an unqualified manner that the manufacture, processing, or preparation of perfume is prohibited on any land or building or other structure within the town of Westport. Amendment No. 29 together with chapter 4A permits land to be used for research purposes and allows manufacturing activity if it is a direct outcome of the research. There is nothing in the regulations to support the conclusion that manufacturing carried out in a research laboratory is not governed by the prohibitions of chapter 2 § 5. The regulations must be construed as a whole and in such a way as to reconcile all their provisions as far as possible. *Kleinsmith* v. *Planning & Zoning Commission,* 157 Conn. 303, 313, 254 A.2d 486.

The conclusion is inescapable that the clear intent of the regulations is that research laboratories may manufacture only those products which are not prohibited by chapter 2 § 5.

To justify the grant of the special permit, it must appear from the record before the commission that the manner in which the applicant proposes to use his property satisfies all conditions imposed by the regulations. *Abramson* v. *Zoning Board of Appeals,* 143 Conn. 211, 213, 120 A.2d 827. The uses authorized by the special permit do not comply with the West-

port zoning regulations and the granting of the special permit was improper.

The plaintiffs urge also that the commission did not afford the plaintiffs a fair hearing. To determine this claim it is necessary that this court have before it the pertinent portions of the record returned by the commission but not included in the printed record. This should be contained in an appendix to the plaintiffs' brief. Practice Book § 719. The testimony included in the appendices to the plaintiffs' briefs contains nothing to support this claim.

The plaintiffs also assign error in a ruling on evidence in the trial court. It is their claim that the record of the public hearing was incomplete. A witness was offered to establish this and an offer of proof was made that at some stage of the proceedings during the Chesebrough presentation a man asked permission to ask a few questions of an expert witness, that he was told on either two or three occasions to sit down, that he would not be granted permission and that he would have his turn later. The court sustained an objection to the question and the plaintiffs duly excepted to the ruling. The man referred to was unidentified. The plaintiffs have no standing to raise in this appeal any claim of unfair treatment to a person who is not a party. The court did not err in excluding this testimony.

In their cross appeal the defendants assign error in the conclusion of the trial court that the plaintiffs are aggrieved by the action of the defendant commission. The court concluded not only that the plaintiffs were aggrieved as a matter of fact on the basis of the finding of subordinate facts in the limited finding, but also as abutting landowners by virtue of the amendment of § 8-8 of the General Statutes. In 1967, the legislature amended § 8-8 to

permit an appeal not only by any person aggrieved by any decision of said board (the board of zoning appeals), but by "any person owning land which abuts the land involved in any decision of said board." It is the claim of the defendants that the provisions of § 8-8 of the General Statutes were incorporated by reference in § 8-9 of the General Statutes and that the 1967 amendment has no effect upon the adopting statute, § 8-9.

" 'As a general rule, the subsequent modification or repeal of a statutory provision adopted by another statute through incorporation by reference is inoperative so far as the adopting statute is concerned, in the absence of express or implied legislative intent to the contrary. Where a particular statute is incorporated into another statute by specific or descriptive words, the presumption is that the legislature did not intend that modification or repeal of the adopted statute should affect the adopting statute.' " *Legat* v. *Adorno,* 138 Conn. 134, 150, 83 A.2d 185.

In 1953 the legislature adopted Public Act No. 458,[2] §§ 1 and 2 of which act became §§ 8-10 and 8-9, respectively, of the General Statutes. Section 2 of the act incorporated by reference the appeal pro-

---

[2] "PUBLIC ACT NO. 458 [1953] AN ACT CONCERNING APPEALS FROM ZONING BOARDS OF APPEALS AND ZONING COMMISSIONS.

"Section 1. The provisions of sections 160b of the 1951 supplement to the general statutes and 2 of this act shall apply to appeals from zoning boards of appeals or zoning commissions of any municipality whether or not such municipality has adopted the provisions of chapter 43 of the general statutes, and any provision of any special act, inconsistent with the provisions of said sections, is repealed.

"Sec. 2. Section 845 of the general statutes is repealed and the following is substituted in lieu thereof: Appeals from zoning commissions may be taken to the court of common pleas in the manner provided in section *** 160b.

"Sec. 3. This act shall take effect from its passage."

visions of § 160b of the 1951 Supplement to the General Statutes (now § 8-8). When § 8-10 is read in the light of its legislative history and policy it becomes abundantly clear that the legislative intent was to create a uniform right of appeal from every zoning board of appeals, zoning commission, planning and zoning commission or other final zoning authority in the state regardless of whether the commission was acting under the general enabling act or under the provisions of a special act. *Sullivan* v. *Town Council,* 143 Conn. 280, 286, 121 A.2d 630. "By adopting the provisions of § 8-10 the legislature evidenced its intention to make the provisions of §§ 8-8 and 8-9 applicable to every municipality in the state." *Puskarz* v. *Zoning Board of Appeals,* 155 Conn. 360, 365, 232 A.2d 109. A reading of these three sections indicates a clear and affirmative legislative intent that a modification or repeal of § 8-8 be operative as to the adopting statute, § 8-9. The trial court's construction of the statute was correct. It is, therefore, unnecessary to discuss the claim of the defendants that the plaintiffs were not aggrieved as a matter of fact.

The remaining assignment of error was not pursued by the defendants in their briefs and is, therefore, considered abandoned. *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619. There is no error on the defendants' cross appeal.

There is no error in the conclusion of the trial court dismissing the plaintiffs' appeal from the granting of the change of zone by the defendant commission. There is error in the action of the trial court dismissing the plaintiffs' appeal from the granting by the defendant commission of a special permit. The Court of Common Pleas in an appeal such as this "may reverse or affirm, wholly or partly,

or may modify or revise the decision appealed from." § 8-8. The finding of error in this respect does not affect the granting of the change of zone. It is clearly severable. *Pecora* v. *Zoning Commission,* 145 Conn. 435, 443, 144 A.2d 48.

There is error in part and the case is remanded with direction to render judgment dismissing the plaintiffs' appeal concerning the change of zone, and sustaining the plaintiffs' appeal concerning the granting of the special permit.

In this opinion the other judges concurred.