THEODORE COPPOLA ET AL. *v.* ZONING BOARD OF APPEALS OF THE CITY OF DERBY
(8715)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued October 2—decision released December 18, 1990

*Peter M. Sipples,* for the appellants (plaintiffs).

*Francis A. Teodosio,* corporation counsel, for the appellee (defendant).

LAVERY, J. The plaintiffs[1] appeal from the judgment of the trial court dismissing their appeal from a decision of the defendant Derby zoning board of appeals (board). The board upheld the building inspector's decision that the plaintiffs' property was in two zones, R-5 and R-15, and that the zoning district boundary line did not follow the plaintiffs' lot lines. The plaintiffs claim that the trial court's dismissal should be reversed because (1) the court failed to find that the board acted illegally, arbitrarily, and in abuse of its discretion when it did not follow the clear language of the zoning ordinance indicating that the zoning district boundary was at the plaintiffs' rear lot lines, (2) the court failed to consider the theory of estoppel presented by the plaintiffs, (3) the court found that a building inspector is empowered to determine the location of zone district boundaries, and (4) the court failed to find that a change in regulations eliminating condominiums in an R-15 district, by implication, changed the meaning of regulations pertaining to boundary locations.

The dispositive issue is the plaintiffs' first claim, whether the zoning regulations and the zoning map of Derby provide that in the absence of zone boundary designation by specific footage on the zoning map the zoning boundary affecting the plaintiffs' property runs along their rear lot line.

We conclude, as a matter of law, that the regulations when taken together and strictly construed, place the zoning boundary at the plaintiffs' rear lot line thereby placing the plaintiffs' property completely within the R-5 zone. We reverse the trial court's dismissal of the appeal.

The trial court in its memorandum of decision filed on October 18, 1989, found the following facts. The

---

[1] The named plaintiff is joined in this action by his wife, Josephine Coppola, who also has an ownership interest in the subject property.

plaintiffs are the owners of a three acre rectangular piece of property with a depth of approximately 675 feet and frontage of approximately 143 feet on New Haven Avenue in Derby. The plaintiffs' lot lines have been the same since the creation of the zoning regulations. The parcel, as shown on the Derby zoning map, appears to be divided by a zoning district boundary placing the front portion of the property in an R-5 zone and the rear of the parcel in an R-15 zone. Prior to February 18, 1987, multifamily dwellings could be built by special exception anywhere in the city of Derby. On that date, the regulations were amended forbidding the construction of multifamily dwellings in an R-15 zone. On February 28, 1987, the plaintiffs received a certificate of zoning compliance from the zoning enforcement officer indicating that the plaintiffs' entire property is located within an a R-5 zone.

Section 25-5 (b) of the Derby zoning ordinance provides: "The boundaries of the several districts are hereby established as shown on the map entitled 'Zoning Map of the City of Derby, New Haven County, Connecticut,' dated May, 1969 and signed by the Mayor and the City Clerk, as the same may be amended from time to time, which map accompanies this Ordinance and is hereby declared to be a part of this Ordinance. . . ."

Section 25-5 (b) (2) provides: "The district boundary lines are intended generally to follow the center lines of streets and similar rights-of-way, shorelines of the Naugatuck River, *lot lines* or city boundary lines, all as shown on the zoning map, *but where a district boundary line does not follow such a line, its position is shown on such zoning map by a specific dimension expressing its distance in feet from a street line or other boundary line as indicated.*" (Emphasis added.) The zoning map itself bears the following notation: "Note: Zone bound-

aries are parallel to street and property lines and *are not intended to divide properties.*" (Emphasis added.)

Section 25-5 (b) (3) of the Derby zoning regulations provides: "In case of uncertainty as to the true location of a district boundary line in a particular instance, the determination thereof shall be made by the Building Inspector. An appeal may be taken to the Zoning Board of Appeals . . . ."

Pursuant to this ordinance, the plaintiffs sought a ruling from the building inspector on the issue of the zoning boundary line. On October 19, 1987, the building inspector determined that the property is in two zones, R-5 and R-15. He further stated, "I do not believe that there is any 'uncertainty' as to the location of the line. The parcel is very large and not of the type the notation on the zoning maps was intended to address."

The building inspector further advised the plaintiffs that "the new revisions in the Derby zoning regulations unequivocally intended that no condominiums be developed in an R-15 Zone. Your proposed relocation of the line *would make a mockery of the regulation. No longer does movement of a zoning boundary merely affect density. It changes the use which is allowed.*" (Emphasis added.)

The building inspector concluded: "[You] may appeal my ruling to the Derby Zoning Board of Appeals. I do, however, feel the more prudent course would be to seek a zone change before the Zoning Commission."

The plaintiffs appealed to the defendant board and, at a hearing on November 19, 1987, pointed out that where lot lines were not followed specific footage dimensions of the zone boundary were noted on the map. The two examples given by the plaintiffs were Chestnut Drive and Sodom Lane. At each of these loca-

tions, the distance noted on the map was 300 feet from the named streets and in most instances the zone boundary on those streets went beyond the lot lines. The record reveals that the board treated the appeal as a zone change. The board denied the plaintiffs' appeal. The plaintiffs' subsequent appeal to the Superior Court was dismissed. In this case, both the board and trial court placed undue emphasis on the uses allowed in the zones and a determination of who is authorized to decide zoning boundary disputes.

It matters not one whit what uses are allowed in R-5 or R-15 zones or who is the officially designated arbiter of zoning boundary disputes. The only issue presented here is what the regulation provides as to the location of the zone boundaries.

The question of whether a particular statute or regulation applies to a given set of facts is a question of statutory interpretation. *Plastic Distributors, Inc.* v. *Burns,* 5 Conn. App. 219, 225, 497 A.2d 1005 (1985). Although the position of the municipal land use agency is entitled to some deference; *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 473, 370 A.2d 1011 (1976); the interpretation of provisions in the ordinance is nevertheless a question of law for the court. *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980); *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116–17, 186 A.2d 377 (1962). The court is not bound by the legal interpretation of the ordinance by the town. See *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152–53, 543 A.2d 1339 (1988). Rather, the court determines legislative intent from the language used in the regulations. *Weigel* v. *Planning & Zoning Commission,* 160 Conn. 239, 246, 278 A.2d 766 (1971). "We interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent. . . . Zoning regulations, as they are in derogation of common law

property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms." (Citations omitted.). *Planning & Zoning Commission* v. *Gilbert,* 208 Conn. 696, 705, 546 A.2d 823 (1988). The words used in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms. *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 153, 543 A.2d 1339 (1988).

In *State* v. *Huntington,* 145 Conn. 394, 399, 143 A.2d 444 (1958), our Supreme Court stated that "[t]he districts must be described with reasonable certainty and must have definite boundaries so that the regulations may be practically applied. The district lines and boundaries must be fixed by the regulations and not by administrative officials or courts." In other words, the fixing of the boundaries is a legislative function and not an activity to be left to the discretion of any enforcement official.

The language of the Derby zoning ordinance is clear. It provides that the established zoning boundaries are as shown on the zoning map, incorporates that map by reference into the ordinance, and states that in the absence of a specific dimension expressing distance from a street line or other boundary, district boundaries are to follow street center lines, shorelines or *lot lines.* The note on the incorporated zoning map itself indicates that zoning boundaries are not intended to divide properties.

Where, as here, the zoning map has been incorporated in and made part of the zoning regulations, the text of those regulations and the zoning map must be considered as a whole when we construe the regulation. *Planning & Zoning Commission* v. *Gilbert,* supra, 707. Thus a " 'zoning map is an integral part of the

zoning regulations, without which the regulations are said to be meaningless.' " Id., 706–707

In clear and unambiguous language, the ordinance and the map that is part of the ordinance require that zoning district boundary lines follow lot lines unless specific dimensions in feet are given. No such "specific dimension" appears on the zoning map in the area of the plaintiffs' property, even though such dimensions do appear on other sections of the map such as Chestnut Drive and Sodom Lane. When taken as a whole and construed strictly, there can be no interpretation of the Derby ordinance that would allow the zoning district to divide the plaintiffs' property. We hold, therefore, that under the clear language of Derby's zoning regulations the zoning boundary between the R-5 and R-15 zones is the plaintiffs' rear lot line leaving the plaintiffs' property completely within the R-5 zone.

The judgment of the trial court is reversed and the case is remanded to that court with direction to render judgment remanding the matter to the defendant zoning board of appeals with direction to sustain the plaintiffs' appeal.

In this opinion the other judges concurred.