[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S ZONING APPEAL
I
 NATURE OF THE PROCEEDING
The plaintiff, Eleanor Duplese, appeals pursuant to General Statutes § 8-8 from a decision of the defendant, the Planning and Zoning Commission of the Town of Bethany ("Commission"), denying the plaintiff's application for a special exception and request for waiver for earth removal excavation, both pursuant to Section 7 of the Zoning Regulations of the Town of Bethany.
 II BACKGROUND
The plaintiff, Eleanor Duplese, submitted an application to the Planning and Zoning Commission of the Town of Bethany on May 4, 1994, captioned "Application for an Earth-Filling, Regrading or Removal Permit," seeking a special exception under Section 7.5 of the Bethany Zoning Regulations for property located off of 111 New Haven Road, Bethany, Connecticut. (Emphasis omitted.) (Return of Record [ROR], Item A.1.) In addition, on or about July 13, 1994, the plaintiff requested a waiver of the 100-foot buffer, pursuant to § 7.5(E)(2)(a)(1) of the regulations. (ROR, Item D.5: Request for Waiver; ROR, Item F.2, pp. 47-49.) The plaintiff, Eleanor Duplese, is owner of the subject property. (Plaintiff's Exhibits, 1B: Deed, 1C: Deed, 1A: Certificate of Change of Name.) The plaintiff is seeking the special exception in order to excavate the sand and gravel on her property so she can expand her residence to approximately 12.4 acres, address a water problem on her property, add a garage and solarium to her house, and relocate the stable and CT Page 1401-O pasture land for her horses. (ROR, Item A.16: "Proposed Purpose and Nature of Operation," submitted 7/6/94.)
On May 19, 1994, and May 26, 1994, the Commission published legal notice of the public hearing in the New Haven Register, pursuant to General Statutes § 8-26e, regarding the plaintiff's application. (ROR Supp, Item 1: Published Legal Notices.) The public hearing was scheduled for June 1, 1994, at the Town Hall. (ROR Supp, Item 1.) On May 6, 1994, pursuant to General Statutes § 8-26f, the Planning and Zoning Commission of the Town of Bethany sent notice by certified mail, return receipt requested, to the clerks of the adjoining municipalities, the Town of Woodbridge and the Town of Seymour (ROR, Items A.8 and A.9.) Also, the plaintiff was sent notice of the public hearing by certified mail, return receipt requested, on May 10, 1994. (ROR, Item A.10.) The public hearing was commenced with respect to the plaintiff's application on June 1, 1994, and the hearing was continued on July 6, 1994, and July 13, 1994. (ROR, Items F.1, E.3:[1] Transcript of 6/1/94 Hearing, Minutes of 6/1/94 Hearing: ROR, Items F.2, E.4: Transcript of 7/6/94 Hearing, Minutes of 7/6/94 Hearing; ROR, Items F.3, E.5: Transcript of 7/13/94 Hearing, Minutes of 7/13/94 Hearing.)
By decision dated October 5, 1994, the Commission denied the plaintiff's request for waiver and special exception. (ROR, Item E.8, pp. 14-15: Minutes of 10/5/94 Meeting; ROR, Item A.26: Correspondence of 10/13/94 to Eleanor Duplese.) The plaintiff now appeals from the Commission's decision.
On October 18, 1994, the plaintiff commenced this appeal of the Commission's decision. Several abutting landowners intervened as party defendants. On December 12, 1994, Edward Molsick's motion to intervene was granted by the court, Thompson, J., as an abutting landowner. In addition, John Kriz, Norma Kriz, Joseph Kriz and Barbara Kriz (hereinafter "Kriz") filed a motion to intervene and it was also granted by the court, Thompson, J., on December 12, 1994.
Subsequently, the plaintiff filed a "Revised Complaint" on March 30, 1995. In it the plaintiff claims that "[i]n denying said application, the Commission acted illegally, arbitrarily and in abuse of its discretion . . . ." in several respects. (Amended Appeal, labelled "Revised Complaint," ¶ 10.) On March 30, 1995, the defendants filed answers to the plaintiff's "Revised Complaint." On April 3, 1995, the defendant Commission filed its answer to the plaintiff's amended appeal, and filed the return of CT Page 1401-P record on January 31, 1995.
On April 12, 1995, the plaintiff filed her brief. The defendant Commission filed its brief on May 17, 1995. On May 17, 1995, the defendant Edward Molsick filed his brief. Also, on May 17, 1995, the defendants Kriz filed their brief. On May 23, 1995, the plaintiff filed a reply brief. A hearing was held before the court, Sylvester, J., on December 20, 1995, and December 27, 1995.
 III JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a local planning and zoning commission to the Superior Court. In order to take advantage of a statutory right of appeal, parties must comply strictly with the statutory provisions that create such a right. Simko v. Zoning Board of Appeals, 206 Conn. 374,377, 538 A.2d 202 (1988). The statutory provisions are mandatory and jurisdictional in nature, and failure to comply will result in dismissal of the appeal. Id., 377.
 A Aggrievement
An aggrieved person "is a person who is aggrieved by the decision of a board . . . ." General Statutes § 8-8(a)(1). A "board" is defined as "a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission . . . ." General Statutes § 8-8(a)(2). General Statutes § 8-8(a)(1) defines an aggrieved person to include "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
Aggrievement is a jurisdictional matter and it is a prerequisite to maintaining an appeal. Winchester Woods Associatesv. Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953
(1991). The plaintiff alleges that she "is aggrieved by the action of the Commission in denial of the application regarding land which she owns." (Amended Appeal, ¶ 9.) As the landowner of the subject property; (Plaintiff's Exhibits, 1B, 1C, 1A.); the court finds that the plaintiff is aggrieved by the adverse decision of the Commission. Winchester Woods Associates v. Planning ZoningCT Page 1401-QCommission, supra, 219 Conn. 308.
 B Timeliness
General Statutes § 8-8(b) provides that an appeal must commenced within fifteen days from the date that the notice of the decision was published. The Commission's decision of October 5, 1995, was published on October, 18, 1994, in the New Haven Register. (ROR, Item A.28: Published Legal Notice of Decision.) On October 13, 1994, notice of the decision was sent to the plaintiff by certified mail, return receipt requested. (ROR, Item A.26; ROR, Item A.27: Return Receipt.) This appeal was commenced on October 18, 1994, by service of process on the Town Clerk, and the Chairman of the Commission. (Sheriff's Return, October 18, 1994.) Therefore, the appeal was commenced in a timely manner.
 IV SCOPE OF REVIEW
"In reviewing an appeal from an administrative agency, the trial court must determine whether `the agency has acted unreasonably, arbitrarily, illegally or in an abuse of its discretion. . . ." (Citations omitted.) Smith v. Zoning Board ofAppeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied,114 S.Ct. 1190 (1993). "The burden of proof is on the plaintiff to demonstrate that the commission acted improperly." Spero v. Boardof Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). "[W]here a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission." (Alterations in original.) West HartfordInterfaith Coalition, Inc. v. Town Council, 228 Conn. 498, 514,636 A.2d 1342 (1994). "The reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . Of course, where there is a failure to comply with the obligation to state reasons, the action is not deemed void but the court must search the record to see whether the board was justified in its decision." Id., 515. Where an administrative agency gives reasons for the denial of a land use application, the denial must be upheld if even one of the reasons given is sufficient to support it.Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, CT Page 1401-R 576, 538 A.2d 1039 (1988) (special exception); Burnham v. Planning Zoning Commission, 189 Conn. 261, 265, 455 A.2d 339 (1983) (zone change); Goldberg v. Zoning Commission, 173 Conn. 23, 26,376 A.2d 385 (1977) (site plan). "If any of the reasons supports the action of the commission, the plaintiff must fail in his appeal."Goldberg v. Zoning Commission, supra, 26.
 V ARGUMENTS
The plaintiff argues that "[i]n denying said application, the Commission acted illegally, arbitrarily and in abuse of its discretion . . . ." in fourteen different respects. (Amended Appeal, ¶ 10.) In particular, the plaintiff argues that the Commission made no finding, as required by § 7.5(E)(2)(a)(1) of the Town of Bethany Zoning Regulations ("regulations"), regarding the plaintiff's request for a waiver of the 100-foot minimum buffer from any property lines or public road. (Plaintiff's Brief, pp. 6-7.) In addition, the plaintiff contends that the 100-foot buffer required by § 7.5(E)(2)(a) of the regulations, as applied to her application for special exception, constitutes an unconstitutional taking of her land without compensation, in violation of the Connecticut constitution, article first, § 11. (Plaintiff's Brief, pp. 19-20.) The plaintiff also alleges numerous other reasons that the Commission "acted illegally, arbitrarily and in abuse of its discretion . . . ." (Amended Appeal, ¶ 10.)
The defendant Commission counters that it properly denied the plaintiff's request for a waiver of the 100-foot buffer requirement under § 7.5(E)(2)(a)(1) of the regulations. (Defendant's Brief, pp. 6-7.) More specifically, the Commission argues that it found that the plaintiff's proposed sand and gravel operation would have an adverse impact on the adjoining parcels, and that the record before it supported such a finding. (Defendant's Brief, pp. 6-7.) Once the Commission denied the plaintiff's request for waiver under § 7.5(E)(2)(a)(1) of the regulations, the Commission argues that it had no choice but to deny the application because the application was not in compliance with the 100-foot buffer required by § 7.5(E)(2)(a). To address the plaintiff's claims of an unconstitutional taking, the Commission argues that the plaintiff is erroneously focusing on the deprivation of the 100-foot buffer, and not on the entire parcel in question, as required by takings jurisprudence. (Defendant's Brief, pp. 21-24.)
CT Page 1401-S
 VI DISCUSSION
First, it is important to define the property that is the subject of this appeal. The land at issue in the application was the plaintiff's residential parcel (4.19 acres) and a second parcel (8.21 acres), which abuts the residence parcel to the north. (ROR, Item A.16, p. 1.; ROR, Item C.4: Property Line Map) For several reasons, the plaintiff intends to expand the size of her residential parcel to 12.4 acres by eliminating a hill behind her home. (ROR, Item A.16, p. 1.; ROR, Item C.1.) Therefore, the combined 12.4 acres is the property that is the subject of this appeal. As a prior nonconforming use, the plaintiff conducts a sand and gravel removal business on parcels to the north of her residential parcel. (ROR, Item F.3, pp. 63-65; ROR, Item C.4.) Those parcels, however, are outside the scope of this appeal.
 A Denial of the Request for Waiver
The first issue is whether the Commission properly denied the plaintiff's request for waiver of the 100-foot buffer requirement. In order to conduct "earth removal, excavation, filling, stockpiling and grading" on any premises in the Town of Bethany, an application must be made to the Planning Zoning Commission, and the activity must be permitted by exemption, administrative permit or special exception. Regulations, §§ 7.0, 7.2(A). Any operations not meeting the requirements of § 7.3 or § 7.4 of the regulations must apply for a special exception permit. Regulations, § 7.5(A)(1). The plaintiff represented to the Commission that she intended to remove approximately 400,000 cubic yards of earth material. (ROR, Item A.16.) As such, the plaintiff had to seek a special exception permit under § 7.5 of the zoning regulations in order to conduct the removal of the earth materials on her property, because her application did not meet the maximum earth removal criteria of § 7.3 or § 7.4. On or about July 13, 1994, the plaintiff requested a waiver of the 100-foot buffer requirement, pursuant to § 7.5(E)(2)(a)(1) of the regulations. (ROR, Item D.5; ROR, Item F.2, pp. 47-49.)
Section § 7.5(E)(2)(a)(1) of the regulations states that operations authorized pursuant to § 7.5(A)(1) "must also comply CT Page 1401-T with the following minimum standards and conditions: . . . there shall be an undisturbed buffer zone of 100 feet minimum from any property line or public road. . . . The Commission may change or eliminate the requirement of a 100 foot buffer if it finds that: 1) The operation will not have an adverse impact on adjoining parcels."
The purposes of § 7 are stated in § 7.1 of the regulations. In particular, § 7.1(A) states that the purpose of the regulations is to "[p]rotect against . . . offensive noise, vibration, dust, smoke and other objectionable influence." In addition, § 7.1(C) states that one of the purposes of the § 7 regulations is to "[r]egulate earth removal, excavation, filling, stockpiling and grading operations so as to minimize negative impacts upon the use and enjoyment of surrounding properties, including but not limited to negative effects upon health, property values, and the future use of the premises involved."
This court's standard of review is limited to determining "whether the assigned grounds [of the Commission] are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." West Hartford Interfaith Coalition, Inc. v.Town Council, supra, 228 Conn. 515. Furthermore, where an administrative agency gives reasons for the denial of a land use application, the denial must be upheld if even one of the reasons given is sufficient to support it. Frito-Lay, Inc. v. Planning andZoning Commission, 206 Conn. 554, 576, 538 A.2d 1039 (1988) (special exception). With these principles of judicial review in mind, this court's analysis must focus on the Commission's grounds for denial of the request for waiver to see whether those grounds were reasonably supported by the record that was before the Commission.
In its official decision the Commission stated the reason for its denial of the request for waiver. The reason given stated that "this Commission hereby denies the request for waiver of the requirement for an undisturbed buffer zone of 100 feet minimum from any property line pursuant to Section 7.5(E)(2)(a) of the Bethany Zoning Regulations because it finds that to grant the waiver would have an adverse impact on the character, value, and enjoyment of the adjoining properties. The purpose of the required 100 foot minimum undisturbed buffer is to protect neighboring properties from the noise, dust, negative visual impact, and other health and safety problems inherent in earth removal projects. . . ." (ROR, Item E.8, p. 14.) CT Page 1401-U
In Whisper Wind Development Corp. v. Planning ZoningCommission, 32 Conn. App. 515, 523, 630 A.2d 108 (1993), aff'd,229 Conn. 176, 640 A.2d 100 (1994), the Connecticut Appellate Court held that the trial court properly determined that the plaintiff's failure to meet general health, safety and welfare requirements set forth in the local zoning regulations of the town provided an adequate basis for the zoning commission's denial of the plaintiff's special permit application, even though the plaintiff's application complied with the detailed technical requirements of the regulations. Id., 520-22. Unlike the plaintiff in WhisperWind, the plaintiff in the instant case has not even met the detailed technical requirements of the local zoning regulations, but initially requested a waiver of a requirement of the zoning regulations — the mandatory 100-foot buffer. Pursuant to § 7.5(E)(2)(a)(1), however, the Commission had to make certain determinations based on general criteria in the regulations in order to grant that waiver. That is, the Commission was required by the regulations to determine if there would be an adverse impact on the properties of the abutting landowners. See id.
The court finds that the Commission's reasons for denial of the request for waiver are supported by ample evidence on the record. West Hartford Interfaith Coalition, Inc. v. Town Council,
supra, 228 Conn. 515. The Commission had before it numerous indications that granting a waiver of the 100-foot buffer would have an adverse impact on the abutting properties: the verified pleading of neighboring landowner Norma Kriz, dated June 1, 1994; (ROR, Item D.8.); report and testimony of Philip W. Ball (real estate appraiser and consultant); (ROR, Item D.11: Report; ROR, Item F.3, pp. 18-23.); photographs; (ROR, Item D.10; ROR, Item F.3, pp. 17-18.); testimony of real estate broker Robert Brooks; (ROR, Item F.2, pp. 81-84.); and the findings of Judge Hodgson from the previous, but related, declaratory judgment action.[2] (ROR, Item D.9, pp. 8-9.) Additionally, the plaintiff's own statement of "Proposed Purpose and Nature of Operation," submitted with the application to the Commission, represented that the quantity of material to be removed would be 400,000 cubic yards of sand and gravel. (ROR, Item A.16) The estimated time period for the removal of the earth materials was three to five years. (ROR, Item A.16.)
"A reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission." (Citations omitted.) Whisper Wind Development Corp. v. Planning ZoningCT Page 1401-VCommission, supra, 32 Conn. App. 523. "Furthermore, on factual issues material to the reasons for the commission's decision, the credibility of witnesses is within the province of the commission. (Citations omitted.) Id. "So long as it appears that an honest judgment has been reasonably and fairly exercised by the commission after a full hearing, courts should be cautious about disturbing [the commission's] decision." (Alterations in original.) Id., quoting Cameo Park Homes, Inc. v. Planning Zoning Commission,150 Conn. 672, 677, 192 A.2d 886 (1963). The Commission's reasons for denial of the request for waiver are substantially supported by the record, and this court will not disturb that decision.[3] Therefore, the court finds that the Commission did not act unreasonably, arbitrarily, illegally or in an abuse of its discretion by denying the plaintiff's request for waiver. Smith v. Zoning Board ofAppeals, supra, 227 Conn. 80.
 B Denial of the Special Exception Application
The next issue is whether the Commission was correct in determining that the plaintiff's special exception application violated § 7 of the Zoning Regulations. Once the Commission denied the request for waiver, the Commission had to determine whether the § 7 special exception application complied with § 7.5(E)(2)(a). As previously noted, § 7.5(E)(2)(a) states that earth removal operations authorized "must also comply with the following minimum standards and conditions: . . . there shall be an undisturbed buffer zone of one hundred (100) feet minimum from any property line or public road. . . ."
"The terms special permit and special exception have the same legal import and can be used interchangeably. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." Whisper Wind Development Corp. v. Planning ZoningCommission, supra, 32 Conn. App. 520. When acting upon a special exception (special permit) a commission is acting in an administrative capacity, and the zoning commission's "function is to determine whether the applicant's proposed use is expresslypermitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied." (Citations CT Page 1401-W omitted; emphasis added; internal quotation marks omitted.) Felsmanv. Zoning Commission, 31 Conn. App. 674, 678, 626 A.2d 825 (1993), citing A.P. W. Holding Corporation v. Planning Zoning Board,167 Conn. 182, 185, 355 A.2d 91 (1974). "It is well settled that in granting a special permit, an applicant must `satisf[y] all conditions imposed by the regulations.'" (Alterations in original; emphasis in original.) Whisper Wind Development Corp. v. Planning Zoning Commission, supra, 521, quoting Weigel v. Planning Zoning Commission, 160 Conn. 239, 246, 278 A.2d 766 (1971). A Commission has no obligation to grant a deficient special permit application and place conditions on it in order for the application to meet the deficiency. See id., 522.
The Commission enumerated seven reasons for denial of the plaintiff's § 7 special exception application. The first reason states that "[t]he plan is not in compliance with the Zoning Regulations in that it requires removal of earth material within the minimum 100 Foot buffer zone required by Section 7.5(E)(2)(a)." (ROR, Item E.8, P 14.) This reason is substantially supported by the record; (ROR, Item F.2, pp. 47-49.); and as such, the plaintiff's appeal must fail on this basis. Frito-Lay, Inc. v.Planning and Zoning Commission, supra, 206 Conn. 576; Goldberg v.Zoning Commission, supra, 173 Conn. 26. As a practical matter, the plaintiff's request for waiver essentially concedes that her special exception application is not in compliance with § 7.5(E)(2)(a). The court need not address the Commission's other stated reasons for denial of the special exception application, because the denial must be upheld if even one of the reasons given is supported by the record. Frito-Lay, Inc. v. Planning and ZoningCommission, supra, 206 Conn. 576. Therefore, the plaintiff has not met its burden of proof. Spero v. Board of Appeals, supra,217 Conn. 440.
Notwithstanding, the court finds that the Commission's other reasons for denial are reasonably supported by the record. Accordingly, this court finds that the Commission did not act unreasonably, arbitrarily, illegally or in an abuse of its discretion by denying the plaintiff's special exception application. Smith v. Zoning Board of Appeals, supra, 227 Conn. 80.
 C Takings Claim
The final issue is whether the denial of the plaintiff's CT Page 1401-X request for waiver or special exception application constitutes an unconstitutional taking. Ordinarily, a party cannot seek the relief provided in a zoning regulation and later in same the proceeding, or in an appeal, attack the constitutionality of that zoning regulation. Cioffoletti v. Planning Zoning Commission,209 Conn. 544, 549-50, 552 A.2d 796 (1989) (generally, takings claims not allowed, although legislature provided otherwise);Florentine v. Darien, 142 Conn. 415, 428, 115 A.2d 328 (1955);D'Addario v. Planning Zoning Commission, 25 Conn. App. 137,141-42, 593 A.2d 511 (1991) (takings claim). As a general rule, a party must seek a declaratory judgment action in order to constitutionally challenge a zoning regulation. Bombero v.Planning Zoning Commission, 218 Conn. 737, 744-46, 591 A.2d 390
(1991). The imposition of a regulation that is claimed as an unconstitutional taking, however, can be raised after seeking relief under the challenged regulation. Id., 746. Therefore, the plaintiff in this appeal can mount a constitutional takings challenge to the mandatory 100-foot buffer required by the zoning regulations.
The plaintiff alleges that "the Commission approval requires a final site plan development for the plaintiff's home, located on residentially zoned land, [sic] provide a 100 foot buffer for neighboring residential property of adjoining landowners, and thereby committed an unconstitutional taking of land without compensation." (Amended Appeal, ¶ 10(E).) The plaintiff argues that her property has been "taken for public use without just compensation," in violation of the constitution of Connecticut, article first, § 11.[4] (Plaintiff's Brief, pp. 19-20.) The Connecticut Supreme Court has previously implied that article first, § 11, of the Connecticut constitution may provide independent protections above and beyond those of the takings clause of the federal constitution.[5] State v. Hillman, 110 Conn. 92,107, 147 A. 294 (1929); W. Horton, The Connecticut State Constitution: A Reference Guide (1993) p. 70. There has, however, been no significant distinctions made between the two constitutional provisions since Hillman, and the Connecticut Supreme Court has "never interpreted the two provisions to require different analysis." Bauer v. Waste Management of Connecticut,Inc., 234 Conn. 221, 250 n. 16, 662 A.2d 1179 (1995); see also Lufv. Southbury, 188 Conn. 336, 342, 342 n. 4, 449 A.2d 1001
(1982) (noting the dual prohibition); Brecciaroli v. Commissioner ofEnvironmental Protection, 168 Conn. 349, 354, 362 A.2d 948
(1975) (same); W. Horton, The Connecticut State Constitution: A Reference Guide, supra, p. 70. In Bauer v. Waste Management, Waste CT Page 1401-Y Management brought its takings claim under the Connecticut constitution, but on appeal the parties did not argue that the Connecticut constitution "provides different protection for property owners from that provided by the fifth amendment's takings clause. . . . [The Connecticut Supreme Court assumed] for purposes of [the] appeal that article first, § 11, provides the same protection for property owners as that provided for under its federal analogue." Bauer v. Waste Management of Connecticut. Inc.,
supra, 249-50, 250 n. 16. Therefore, this court will use state and federal cases regarding takings jurisprudence interchangeably.
"Two tests have been used in Connecticut cases to determine whether land use regulations go so far as to amount to an unconstitutional restriction on the use of property, namely the practical confiscation test and the balancing test." R. Fuller, 9 Connecticut Practice Series, Land Use Law and Practice (1993) § 54.4, p. 869. The two tests are stated as follows: "[A regulation] which permanently restricts the use of land for any reasonable purpose . . . goes beyond permissible regulation and amounts to a `practical confiscation.'" (Citations omitted; emphasis in original.) Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146,151, 365 A.2d 387 (1976). "Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a `practical confiscation,' the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner. . . . The financial effect on a particular owner must be balanced against the health, safety and welfare of the community." (Citations omitted; internal quotation marks partially omitted.) Id.
"In other words, a determination as to whether a zoning regulation is unreasonable as applied to a particular piece of property so as to constitute a taking must be made in light of the facts and circumstances of each particular case. . . . A trial court employs a balancing test in determining whether a taking has occurred." D'Addario v. Planning Zoning Commission, supra,25 Conn. App. 143. "Subsidiary factors involved are the location of the land, the size of the parcels affected by the administrative action, the physical characteristics of the land, the necessity of further action by the town for the landowner to achieve maximum use of the land if the initial action is upheld, and the effect of the action on the surrounding landowners and the public in general." CT Page 1401-Z Id., 143-44.
Moreover, "[t]he maximum possible enrichment of a particular landowner . . . is not a controlling purpose of zoning. . . . Mere reduction in value will not suffice for a claim of confiscation." (Citations omitted.) Primerica v. Planning Zoning Commission,211 Conn. 85, 98, 558 A.2d 646 (1989). "There is no set formula to determine where regulation ends and taking begins. Although a comparison of values before and after is relevant . . . it is by no means conclusive . . . ." Brecciaroli v. Commissioner ofEnvironmental Protection, supra, 168 Conn. 355. Because a diminution in value is not conclusive (not the sole factor), even a substantial reduction in value may not necessarily constitute a taking. Id.
This court must proceed under the balancing test enunciated inChevron Oil, as the plaintiff is not being denied all reasonable use of the property that is the subject of this appeal — the 12.4 acres — but only a 100-foot buffer on those parcels. The court begins its analysis under the balancing test of Chevron Oil by determining the diminution in value to the plaintiff's property as a result of the required 100-foot buffer.
The court heard testimony from and received the appraisal report from the plaintiff's appraiser, William E. Valentine. The court also heard testimony from and received the appraisal report from the Commission's appraiser, Edward Heberger. The court finds both appraisals to be credible. The court, however, finds Heberger's appraisal to be more realistic because it did not "splinter-off" the 100 buffer. That is, the Heberger appraisal treated the property that is the subject of this appeal as a whole for purposes of the appraisal — the 12.4 acres as proposed in the § 7 special exception application. (Defendant's Exhibit A, p. 1.) In contrast, the Valentine appraisal only estimated the loss in value based on 1.78 acres, which is the 100-foot buffer area that is restricted. (Plaintiff's Exhibit 3, pp. 1, 10.) The court defines the property for its constitutional takings analysis as the 12.4 acres for which the plaintiff sought the special exception. See Bauer v. Waste Management of Connecticut, Inc., supra,234 Conn. 253.
The Heberger appraisal estimated that the fair market value of the 12.4 acres and improvements is $195,000. (Defendant's Exhibit A, p. 2.) Heberger's appraisal estimated that the loss of value due to the imposition of the 100-foot buffer is zero. (Defendant's CT Page 1401-W Exhibit A, p. 2.) He found so partly because "the property owner is not prevented from conducting the residential uses as proposed by her application within the 100 foot buffer area." (Defendant's Exhibit A, p. 2.)
The Valentine appraisal estimated that the loss in value due to the imposition of the 100-foot buffer is $283,000 — $45,000 for the loss of the 1.78 acres (100-foot buffer), and $238,000 in lost income, after expenses, from the plaintiff not being able to remove and sell the earth materials from the 100-foot buffer. (Plaintiff's Exhibit 3, pp. 28-31; Plaintiff's Exhibit 4: Supplement to Appraisal.)
"`Taking' jurisprudence does not divide a single parcel into discreet segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has affected a taking, [the court must focus] rather on both the character of the action and on the nature of the interference with rights in the parcel as a whole." Penn Central Transportation Co. v. New York City,438 U.S. 104, 130-31, 98 S.Ct. 2646, 57 L.Ed.2d 631, reh. denied,439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978); KeystoneBituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 497,107 S.Ct. 1232, 1248, 94 L.Ed.2d 472, 496 (1987). The "test for regulatory taking requires [the court] to compare the value that has been taken from the property with the value that remains in the property . . . ." Keystone Bituminous Coal Assn. v. DeBenedictis,
supra, 497.
Although the plaintiff's appraiser was correct in determining the income loss from not being able to remove the sand and gravel from the 100-foot buffer zone, the plaintiff's appraiser did not estimate total figures for the income loss based on the whole 12.4 acres, or at least on the portion of the subject property that was capable of being excavated. Therefore, the plaintiff has not proven the value that has been taken from the property versus the value that remains in the property. Keystone Bituminous Coal Assn.v. DeBenedictis, supra, 480 U.S. 497. On the other hand, the Heberger appraisal did not estimate any loss from the plaintiff not being able to remove the earth materials from the 100-foot buffer. "A landowner has the burden of establishing that a land use regulation amounts to a taking of his particular property."Bombero v. Planning Zoning Commission, supra, 218 Conn. 746. The plaintiff has not met her burden regarding the loss of income value "before" and "after" the imposition of the 100-foot buffer. CT Page 1401-X
Nevertheless, the court can still make sufficient findings. The court notes that the plaintiff's own statement of "Proposed Purpose and Nature of Operation," submitted to the Commission, represented that the quantity of material to be removed would be 400,000 cubic yards of sand and gravel. (ROR, Item A.16) If Valentine's appraisal is correct in its determination that the plaintiff could earn income of approximately $3.50 per cubic yard of earth material sold, after expenses, then the total value of the earth material that can still be excavated is worth approximately $1,162,000. That number is arrived at by multiplying the $3.50 by 332,000 cubic yards; the 332,000 cubic yards is the earth material that is not subject to the imposition of the 100-foot buffer (comprised of approximately 68,000 cubic yards). (Plaintiff's Exhibit 3, pp. 28-31; Plaintiff's Exhibit 4: Supplement to Appraisal.) The diminution in value is approximately seventeen percent. This, of course, does not take into account the fact that the residential value has only been slightly affected, if at all. (Compare, Plaintiff's Exhibit 3, pp. 31; Defendant's Exhibit A, p. 2.) The court finds that this diminution in value does not rise to the level of a constitutional taking.
Furthermore, the court finds that this diminution in value does not outweigh the public harm that must be weighed in the balance. The nature and degree of the public harm to be prevented is apparent from the evidence that was presented to the Commission; (See, supra, pp. 12-13, of this Memorandum of Decision.); and this court takes judicial notice of the facts in the record that was before the Commission. This court may take judicial notice of the facts in the file of this case. Borkowski v. Borkowski, 228 Conn. 729,746 n. 6, 638 A.2d 1060 (1994); Nichols v. Nichols, 126 Conn. 614,620-21, 13 A.2d 591 (1940); Mirto v. Sullivan, 36 Conn. Sup. 615,617, 422 A.2d 333 (App. Sess. 1980) (a court may take judicial notice on its own initiative or on the request of a party). The court finds that the evidence of adverse impacts to the surrounding landowners is substantial.
In addition, this court takes judicial notice of the decision by Judge Hodgson in Duplese v. Bethany Planning ZoningCommission, Superior Court, judicial district of New Haven at New Haven, Docket No. 300992 (November 5, 1993, Hodgson, J.), wherein the court found that the requirement of the 100-foot buffer was rationally related to the statutory goals of protecting the public health, safety, convenience, property values, and general welfare. "There is no question that [a] trial court may take judicial notice CT Page 1401-Y of the file in another case, whether or not the other case is between the same parties." (Citations omitted; internal quotation marks omitted.) Drabik v. East Lyme, 234 Conn. 390, 398,662 A.2d 118 (1995); see also In re Mark C., 28 Conn. App. 247, 253,610 A.2d 181 (1992) (same parties).
The plaintiff can still use her property for the intended purpose of increasing her residential property, while garnering income from removing the earth materials; the plaintiff must merely leave the 100-foot buffer undisturbed. The plaintiff can resubmit a special exception application to the Commission that complies with the 100-foot buffer requirement. See D'Addario v. Planning Zoning Commission, supra, 25 Conn. App. 143-44. Also, the effect of the Commission's action protects the surrounding landowners from clearly adverse conditions when excavation is conducted within 100 feet of their surrounding properties. See id.
Having balanced the several factors noted above, the court finds that there has been no unconstitutional taking under either the federal or state constitutions.
 VII CONCLUSION
For the reasons set forth above, pursuant to General Statutes § 8-8(1), the court affirms the actions of the Commission. Therefore, the court denies the plaintiff's appeal.
SYLVESTER, J.